Beatrice **MANTHE**, Individually and as Next Friend to Shawn Allen Dart, a Minor, Plaintiffs,

v.

Vernon **VANBOLDEN, II., M.D.**, University Medical Center (formerly known as Lubbock General Hospital), and Fred Dart, Defendants.

v.

**JACKSON & COKER, INC.**, Third Party Defendant.

Civ. A. No. CA–5–90–085–C.

United States District Court, N.D. Texas, Lubbock Division.

Jan. 10, 1991.

Roger Michael Millsap, Sam Louie Fadduol, Lubbock, Tex., for plaintiff, Beatrice Manthe.

Thomas J. Griffith, Lubbock, Tex., for plaintiff, Fred Dart.

Tom Heatly Whiteside, Lubbock, Tex., for defendant, Vernon VanBolden.

Charles E. Galey, Lubbock, Tex., for defendant, University Medical Center.

John E. Simpson, Lubbock, Tex., J. Marbury Rainer, Atlanta, Ga., for third party defendant, Jackson & Coker, Inc.

## ORDER

CUMMINGS, District Judge.

On this date the Court considered the Plaintiffs' Application for Review of the Magistrate's Order of January 3, 1991, and the response of Defendant University Medical Center thereto. The Court finds that the Order of the Magistrate is neither clearly erroneous nor contrary to law.

 It is, therefore, ORDERED that the Order of the Magistrate dated January 3, 1991, is hereby affirmed and adopted as the Order of the Court.

## ORDER RULING ON UMC'S MOTION ·FOR PROTECTIVE ORDER

Filed January 3, 1991

J.Q. WARNICK, Jr., United States Magistrate Judge.

The Defendant, University Medical Center (hereinafter UMC) filed on November 30, 1990 a Motion for Protective Order. UMC sought protection from being required to answer certain interrogatories and from being required to produce for inspection certain documents.

Following a status conference on December 13, 1990, UMC filed two (2) packets of materials on December 26, 1990 for in-camera examination. Along with the in-camera materials UMC also filed an Amended Motion for Protective Order. Plaintiff had filed a Response to the Motion for Protective Order. By Order of the Court on December 4, 1990, all parties were given an

opportunity to respond to the UMC Motion for Protective Order. However, only the Plaintiff responded to the Motion.

Basically, the in-camera materials are divided into two (2) broad categories. UMC filed two (2) sealed containers of materials. In its Amended Motion it referred to those packets of materials as Exhibit A and Exhibit B. However, the outside of the containers did not bear an exhibit A nor B designation. Exhibit A was the credentials file and the in-camera submission inside the container was appropriately labeled as Exhibit A. Exhibit B was the Peer Review file and the in-camera submission inside the container was appropriately labeled as Exhibit B.

UMC seeks to protect these materials from discovery under three (3) categories of claims of privilege and confidentiality of information. Under Rule 501, Federal Rules of Evidence, the question of privilege is controlled by the state law and should be determined in accordance with state law, although one of the claims of UMC is based upon Federal law.

One of UMC's grounds is based upon Sections 161.031 and 161.032, Texas Health and Safety Code (formerly Art. 4447d, Revised Civil Statutes of Texas). The second category of UMC's claim under State Law is based upon Art. 4495b, Sec. 1.03(a)(6) and (9) and Sec. 5.06(s)(3), Revised Civil Statutes of Texas. The final claim is based upon 42 U.S.C. 11131, et seq., but particularly 42 U.S.C. 11137.

■ The parties cited several cases to the Court. Two are from the Supreme Court of Texas, *Jordan v. Court of Appeals*, 701 S.W.2d 644 (Tex.1985), and *Barnes v. Whittington*, 751 S.W.2d 493 (Tex.1988). See also *Santa Rosa Medical Center v. Spears*, 709 S.W.2d 720 (Tex. App.—San Antonio 1986), *Doctor's Hospital v. West*, 765 S.W.2d 812 (Tex.App.— Houston, 1st Dist.1988). All of these cases were limited to holdings under Sec. 161.-032, supra. In some of the cases the Court took occasion to state it was the only ground properly raised. Sec. 161.032 and its definition in 161.031 is a broad painting brush with regard to medical committees in

medical care facilities. Art. 4495b, supra, is a much more limited statute. Its committee is probably included within the definitions of Sec. 161.032. Art. 4495b is limited to Peer Review committees, *Goodspeed v. Street*, 747 S.W.2d 526, 528 (Tex.App.— Ft. Worth 1988) and *Huntsville Memorial Hospital v. Ernst*, 763 S.W.2d 856 (Tex. App.—Houston, 14th Dist.1988).

The standard of application of this specially created statutory privilege of confidentiality is set out in *Jordan v. Court of Appeals*, supra at pages 647, 648 when the Court said as follows:

> "The deliberations of a *hospital committee* are protected from discovery. *Texarkana Memorial Hospital, Inc. v. Jones*, 551 S.W.2d [33] at 35 [ (Tex.1977) ]. Accordingly, we find that the statutory language, 'records and proceedings' means those documents generated by the committee in order to conduct open and thorough review. In general, this privilege extends to documents that have been prepared by or at the direction of the committee for committee purposes. Documents which are gratuitously submitted to a committee or which have been created without committee impetus and purpose are not protected. In addition, the privilege extends to minutes of committee meetings, correspondence between committee members relating to the deliberation process and any final committee product, such as recommendations." (Emphasis added)

■ While arguably this standard as set out in *Jordan* could be considered only as dicta, it is now followed in Texas as the standard. It might be considered dicta because the final holding of the Court was even though there was a privilege over the documents, it had been waived. The Court just as easily could have held assuming arguendo, there was a privilege, it had found waiver, therefore it was not necessary to decide whether there was or was not a privilege over those types of documents. However, the doctrine from the *Jordan* case is distilled and recertified in *Barnes v. Whittington*, supra. The Court specifically said, at pg. 496, the documenta-

tion is protected by this medical committee privilege if it was sought out or brought to the attention of the committee for purposes of an *investigation, review or other deliberative proceeding.* The Court further recognized however, even though the committee might consider an evaluated document, this alone does not automatically transform the document into a committee record or proceeding.

■ The final claim of privilege was under the Federal Statute. The general purpose and intent of the Federal statute was to create a central and national repository for reporting matters involving doctors. It is obviously possible for a medical care or health facility to request information from the Secretary of Health and Human Services regarding a particular doctor when going through the hiring process or perhaps even a Peer Review process. 42 U.S.C. 11137(b)(1) controls the release of information when *provided* upon a request to appropriately listed authorities by the Secretary where such information came into the Secretary's hands by virtue of this statutory scheme. It remains confidential and may not be disclosed unless applicable State Law makes its disclosure permissible. However, amongst the affidavits filed by UMC no claim is made any document contained in the Peer Review files or the Credentialing files was provided through the Federal process as covered by 42 U.S.C. 11131, et seq. Therefore, the Federal statute under its own terms has no application to the Motion before the Court.

UMC also makes the claim for the application of 42 U.S.C. 11137 because Sec. 5.06(a), Art. 4495b supra, says the provisions of the Health Care Quality Improvement Act (42 U.S.C. 11131 et seq.) apply to a professional review action taken by a professional review body in Texas. UMC argues this section makes the Federal law fully applicable to this case. A fair reading of this section of the State Law indicates a medical Peer Review Committee as covered

under Art. 4495b can send their reports and records to the Secretary of Health and Human Services. If they do, then not only do they have available to them this State law, but they will continue to be protected because of the Federal Law. Thus, if there was some question raised there had been a waiver of the confidentiality provisions of the State law by virtue of having sent the records to the Secretary of Health and Human Services, then the health care provider or hospital could say, according to Sec. 5.06(a), supra, our records continue to be confidential because, according to our own State law we simply have complied with the Federal Laws, thus the records remain confidential. It is not plain on the face of this as urged by UMC that Sec. 5.06(a) was intended to incorporate all of the definitions in the Federal Statute under the State Laws. Therefore, as already noted the Federal Statute has no application to consideration of the claims of the UMC as to confidentiality.

As noted, Sec. 161.031 is rather broad in its scope. It includes *any* committee founded by a hospital under its own bylaws or rules. The affidavit of Mr. James P. Courtney, Chief Executor Officer of the UMC, makes it plain there was at UMC a quality assurance committee known as the Executive Committee (hereinafter Quality Assurance Committee). It was created under the bylaws, rules and regulations [1] as applicable to UMC's professional medical staff. In addition, part of the files have to do with the Peer Review Committee created under those same bylaws which would not only be protected by Sec. 161.031 but also by Art. 4495b, supra. It is, therefore, necessary for the Court to review the documents as submitted and to determine if they have been submitted to the Quality Assurance Committee or if they were submitted to the Peer Review committee for purposes of either an investigation, review or determination by either committee. If it fits in either of those categories, then under either or both of the two Texas stat-

---

**1.** At the hearing on this Motion UMC provided to the Court copies of (1) UMC's "Professional Staff Bylaws and rules and regulations", (UMC's Exhibit 1), and (2) UMC's "Lubbock General Hospital Quality Assurance Plan" (UMC's Exhibit 2). Plaintiffs agreed they had previously been provided with copies.

utes, it would be protected from discovery and would remain confidential as privileged information.

■ UMC and the attorneys for the Plaintiffs are agreed the purposes of the two Texas Statutes is to permit quality control investigation and review of the activities of physicians performing their services in hospitals. Patient care, its quality and delivery is the light at the end of the tunnel. Likewise, it is intended to encourage other hospital personnel to make their reports about incidents so they may be looked into by a professional staff. If those documents, reviews, investigations, summaries and recommendations were made available in the discovery process, then it would have a chilling effect on the quality assurance reviews and the peer review investigations. With this singular purpose in mind, it also becomes abundantly clear there could be contained within the files of a Peer Review Committee or a Quality Assurance Committee documents containing no information which needs to be protected under this privilege. It is the policy of the Courts to use any privilege of confidentiality in as limited a fashion as possible so as not to thwart the discovery of documents which are obviously not protected by the *purpose* of the privilege. It is not the label of the document nor the file to which it is assigned which will protect it. Its contents are the latchkey.

Under *Jordan v. Court of Appeals,* supra and its refinement under *Barnes v. Whittington,* supra, it is possible to define the standards for reviewing documents of medical committees. Generally speaking any document prepared by the committee or its members in performing the quality assurance function or the peer review investigation is protected. If the committee directs any persons or requests any person to prepare a document to be used in assisting its quality control function or its peer review investigation, then those documents prepared at the behest, request and created on the impetus of the committee are also protected. The Texas Courts have engaged in making a brief list of examples of documents to be protected. This list includes (1) minutes of the committee meeting, (2) correspondence between committee members relating to the deliberative process and (3) the final committee report or recommendation. The Courts also made it plain, simply because a document appears in the files of either of the two committees, it may not ipso facto be protected. Documents in the files which were created without request or by direction of the committee or documents not created for committee purposes are neither one protected from discovery. Add to this the fact the policy of the two acts is to protect certain information and not just pieces of paper, it is also possible to have certain committee documents fall in one of these categories which would not be protected. Examination of the files in this case have been made on the basis of these Texas holdings with regard to this special medical committee statutory privilege of confidentiality.

There is an affidavit from Dr. Timothy J. Harnar for the appropriate time periods involved. He was Director of the Surgical Intensive Care Unit at UMC, formerly Lubbock General Hospital. Also included is the affidavit of Dr. Gerald S. Laros who at the pertinent periods of time was admitted to practice and on the medical staff in the Orthopedic Department at UMC. Both of these doctors gave their affidavits with regard to the Executive Committee its quality assurance control and the Peer Review Committee. Their affidavits, coupled with those of Mr. James P. Courtney clearly demonstrate most documents contained in Exhibit B or the Peer Review files are protected by one or both of the sections of the Texas Law creating a privilege of confidentiality for such medical committee documentation.

With regard to the peer review file, it is found certain documents in the file are not protected from discovery. It is found the following documents numbers are discoverable, to-wit:

Document No. 1:

Letter dated July 10, 1989 from Dr. Vernon VanBolden to the hospital and the Health Sciences Center.

Document No. 2:

A letter from the Texas State Board of Medical Examiners dated September 14, 1989.

Document No. 3a:

A letter from attorney Charles Galey to Jim Courtney dated September 7, 1989.

Document No. 31:

A letter dated July 25, 1989 from Surendra K. Varma to Dr. Gerald Laros.

Document No. 16:

A letter from Dr. Vernon VanBolden to Dr. Gerald S. Laros dated June 15, 1989.

Document No. 17:

A letter dated June 16, 1989 from James P. Courtney to Dr. Vernon Van-Bolden.

Document No. 18:

A letter dated June 20, 1989 from James P. Courtney to Dr. Vernon Van-Bolden.

Document No. 19:

A letter dated June 23, 1989 from Dr. Vernon VanBolden to Gerald S. Laros.

Document No. 22:

A letter dated July 7, 1989 from Surendra Varma to Dr. Vernon VanBolden.

Document No. 23:

A letter dated July 7, 1989 from Surendra Varma to Dr. Vernon VanBolden.

Document No. 67:

(Two pages) which is not minutes but is only the agenda for the Executive Committee meeting of June 5, 1989.

Document No. 68:

Which is not minutes but simply a notice of the professional staff meeting set for June 27, 1989.

Also included in the packet of the Peer Review files was an additional copy of Document No. 1. Attached with it was the hospital and physician agreement (of 7 pages dated July 20, 1988) between the then Lubbock General Hospital, Dr. Vernon VanBolden, a two page lease agreement between Dr. Royce C. Lewis, Jr. and Dr. Vernon VanBolden, four pages of an inventory and finally an Endorsement for Professional Liability Claims covering Dr. Vernon VanBolden. Those documents were not listed by number. No claim was made with regard to them. They are found, along with the other above documents, to be DISCOVERABLE.

While some of these documents may have been prepared by the committee or were in response to a committee communication, they are not the type of documents with contents sought to be protected by the Texas Statutes.. Other documents simply do not relate to anything having to do with the claimed privilege of confidentiality.

It is, therefore, FOUND all of the documents with the exception of the above list are found to be protected by the Texas Statutory Medical Committee Privilege and are to remain confidential. The above listed documents shall be separated out and placed in a separate container marked as "Exhibit D".

It is, ORDERED, the documents which are in a file labeled "Exhibit D" are found not to be protected by the privilege to remain confidential.

It is, therefore, ORDERED, the Clerk of this Court is authorized on January 9, 1991 to open "Exhibit D" or a part of the Peer Review File. These documents are to be made available to the Plaintiff or any other party for examination and copying.

It is, FURTHER ORDERED, the remaining documents in the Peer Review File are found to be protected by the privilege of confidentiality under the Texas Law and the documents are ORDERED to remain sealed and a copy of this Order to be placed on said file showing it shall not be opened except on further Orders of this Court.

With regard to the credentialing file, it is admitted by UMC documents Nos. 76, 77, 78, 81, 82, 144, 145, 154, 172 and 177 through 269 inclusive, are discoverable and not protected by any doctrine of common or statutory law for confidentiality. The only documents in the file to which any of the affidavits make reference are Nos. 133, 134, and 155.

■ Based upon Article XI, Sec. 2(10) and (11) of the Bylaws, Rules and Regulations of the hospital, and Sec. 5.06(a), Art. 4495b, supra, UMC attempts to argue the

credentialing files are also covered by the Texas Statutes. The sole purpose of creating this limited privilege of confidentiality was to permit quality assurance control of activities going on in a hospital and to review those activities. This is an effort by UMC to vault form over substance. It is almost an argument once a hospital in Texas names something "committee" then it immediately becomes covered by the confidentiality statutes. Those functions of the credentialing committee or the Executive Committee during the hiring process has nothing to do with the daily activities going on in the hospital nor would it insure hospital personnel will feel free to report incidents and make complaints. Nothing will have happened concerning patients care at the time the hiring process goes on. It may well be some information, although not in this case, may have come from the Secretary of Health and Human Services. Thus, under the Federal Statute would be protected, 42 U.S.C. 11137. However, there is nothing in the credentialing files which has been shown to be protected by this special set of Texas Statutes regarding confidentiality of hospital committees. Thus, the privileges with regard to the matters now before the Court are limited to the Executive Committee in its quality assurance role and the Peer Review Committee investigations.

It is, therefore, FOUND documents 133 and 134 are protected by the Texas Statutory Committee privilege and are to remain confidential. It is FURTHER FOUND document No. 155 is protected under the attorney-client privilege as it is a document giving advice from the attorney representing UMC to personnel at the UMC. Therefore, from the Credentialing Files, documents 133, 134 and 155, have been placed by the Court in a separate container. It is, ORDERED, these documents which are in a file labeled "Exhibit C" are found to be protected by a privilege and are to remain confidential. It is found all other documents numbered 70 through 269 exclusive of documents 133, 134 and 155 are found not to be protected by any doctrine of confidentiality and are ORDERED released

for examination and copying by the Plaintiffs or any other party.

It is, therefore, ORDERED the Clerk of this Court is authorized on January 9, 1991 to open Exhibit A or the Credentialing File as provided by UMC and from which has been eliminated documents 133, 134 and 155. Those documents left in Exhibit A are to be made available to the Plaintiff or any other party for examination and copying.

If any party intends to object to this Order for Release of such Information, then they must file their Objections with the United States District Judge no later than January 7, 1991 at 3:00 P.M. If they file such Objections, the party making such Objection will also have to acquire an Order from the Court staying the opening of the Credentialing File and the release of such information. Upon the failure of a party to obtain such Order, whether they file Objections or not, the clerk is hereby authorized to open the Credentialing File less the three (3) documents and make it available to the Plaintiff or any party for copying and examination.

It is, further ORDERED the Peer Review file with the exception of those documents in "Exhibit D", is to remain sealed and held in-camera for Court examination only. Any party desiring to appeal from the Order granting confidentiality to such documents must file their Objection with the United States District Judge no later than January 7, 1991 at 3:00 P.M.

Any party aggrieved by this ruling may appeal to the United States District Judge assigned to this case, Miscellaneous Order No. 6, Rule 4 Review and Appeal, (b)(1) Appeal of Non–Dispositive Matters—28 U.S.C.A. 636(b)(1)(A), of the United States District Court for the Northern District of Texas.

NO RECONSIDERATION OF THIS ORDER WILL BE MADE BY THE UNDERSIGNED U.S. MAGISTRATE.