Margaret LeMASTERS, M.D., Plaintiff,

v.

The CHRIST HOSPITAL,
et al., Defendants.

No. C-1-90-723.

United States District Court,
S.D. Ohio, W.D.

Dec. 26, 1991.

See also, 777 F.Supp. 1378.

Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, Ohio, for plaintiff.

James Allen Hunt, Anthony Joseph Caruso, Kohnen, Patton & Hunt, Glen Alan Weissenberger, Cincinnati, Ohio, for defendants.

James Joseph Hughes, Jr., Bricker & Eckler, Columbus, Ohio, for amicus Ohio Hosp. Ass'n.

Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, Ohio, for counter-defendant.

SPIEGEL, District Judge.

This matter is before this Court for consideration of numerous objections (docs. 38, 39, 77 and 85) to Magistrate Judge Sherman's orders regarding discovery disputes in this matter. The plaintiff opposes the objections (docs. 58, 59, 79 and 89). This Court heard oral arguments on these objections on December 17, 1991.

## BACKGROUND

The plaintiff, Margaret LeMasters, is a physician practicing in the area of obstetrics and gynecology. The defendants are the Christ Hospital and numerous individuals associated with the Christ Hospital. In late 1989, Dr. LeMasters' clinical staff privileges at Christ Hospital were suspended. These privileges were terminated in 1990. The plaintiff filed this action pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* and Ohio Revised Code Chapter 4112 alleging that Christ Hospital and certain individuals affiliated with Christ Hospital discriminated against her on the basis of sex and retaliated against her for participating in administrative proceedings before the Equal Employment Opportunity Commission and Ohio Civil Rights Commission.

The parties in this action have had a number of discovery disputes. In an attempt to resolve several of those disputes, Magistrate Judge Jack Sherman, Jr. issued certain orders (docs. 36, 37, 75 and 82) requiring the defendants to produce relevant discovery material, and imposing sanctions if the defendants failed to do so. The defendants then appealed those orders to this Court. For the reasons set forth below, Magistrate Judge Sherman's orders must be affirmed.

## STANDARD

Where a magistrate judge issues an order regarding a nondispositive pretrial matter, a party may issue an objection to the magistrate judge's order within ten days of receipt of that order. Fed.R.Civ.P. 72(a). "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a) (1991 rev.).

## DISCUSSION

The defendants object to numerous interrogatories on several grounds. The most notable ground for objection is the defendants' claim that peer review information is privileged and therefore not discoverable.

*Peer Review Information*

The Federal Rules of Evidence provide one rule regarding privilege in the federal courts. Federal Rule of Evidence 501 provides in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience....

Fed.R.Evid. 501 (1991). Therefore, in federal question cases, state privilege law does not apply.

However, because Rule 501 refers to "reason and experience", courts in federal question cases may choose to apply state privilege law by analogy or as a matter of comity. *See, e.g., United States v. King,* 73 F.R.D. 103 (E.D.N.Y.1976). The presence of pendent state claims is irrelevant in determining whether the court should adopt the state privilege law. The determination with respect to the federal claims controls discovery for the entire action. *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058 (7th Cir.1981).

In this case, the defendants urge this Court to apply the Ohio peer review privilege statute to Title VII cases. Ohio Revised Code § 2305.251 provides:

> Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, a hospital, ... arising out of matters which are the subject of evaluation and review by the committee. No person in attendance at a meeting of a review committee or serving as a member of a review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the

proceedings of the committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a committee nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within his knowledge, but the witness cannot be asked about his testimony before the committee or opinion formed by him as a result of the committee hearings.

Ohio Rev.Code § 2305.251 (Page's 1991).

Although this is an issue of first impression in this district, other districts are split as to whether a hospital peer review privilege should be adopted in federal question cases. For example, in *Cohn v. Wilkes General Hospital*, 127 F.R.D. 117 (W.D.N.C.1989), a chiropractor sued a hospital and others claiming that they conspired to deny him medical staff privileges in violation of the Sherman Anti–Trust Act and state unfair competition law. A North Carolina statute provides that a medical review committee's proceedings and records are privileged. N.C.Gen.Stat. § 131E–76(2) (1985). The Court, relying on the existence of the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.*, concluded that medical peer review proceedings and records are privileged in both state and federal proceedings. *Cohn v. Wilkes General Hospital*, 127 F.R.D. at 120–21.

Similarly, in *Mewborn v. Heckler*, 101 F.R.D. 691 (D.D.C.1984), a Federal Tort Claims Act case, the Court refused to compel the production of peer review proceedings with respect to the decedent's treatment because the information sought was available through hospital records and reports. A District of Columbia statute provides for a peer review privilege absent a showing of extraordinary necessity. D.C.Code § 32–505 (1978). The Court, in

concluding that production should not be compelled, stated:

> Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

*Mewborn v. Heckler*, 101 F.R.D. at 692 (quoting *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249, 250 (D.D.C.1970), *aff'd*, 479 F.2d 920 (1973)).

On the other hand, in *Dorsten v. Lapeer County General Hospital*, 88 F.R.D. 583 (E.D.Mich.1980), the plaintiff brought a sex discrimination action against a hospital and several doctors affiliated with the hospital alleging wrongful denial of plaintiff's application for physician privileges. The court granted the plaintiff's motion to compel production of peer review reports in spite of a Michigan statute purporting to establish an "absolute privilege" for peer review reports conducted by hospital review boards. *Id.* After noting that the court must balance the plaintiff's need for discovery and the interests protected by the federal statute against the interests protected by the state privilege, the court concluded that:

> [T]he balance weighs in favor of discovery by Plaintiff. Plaintiff's overall claim is one for disparate treatment. It is difficult to perceive how any Plaintiff can be expected to argue and prove such a case without access to the type of review and decision-making processes undertaken in comparable situations with Plaintiff's male "counterparts."

*Id.* at 586. *Also see Memorial Hospital for McHenry County v. Shadur*, 664 F.2d

1058 (7th Cir.1981); *Doe v. St. Joseph's Hospital,* 42 F.E.P. 1565 (N.D.Ind.1987).

In the case at bar, the plaintiff claims that she was discriminated against because of her sex and that the defendants retaliated against her because of earlier discrimination charges she filed administratively. All parties agree that this Court must balance the respective interests to determine whether the Ohio peer review privilege should be applied. After carefully considering the arguments made by both sides, we conclude, as did the court in *Dorsten,* that the plaintiff's right to be free from discrimination and her need for information sufficient to prove her allegations outweigh the defendants' desire for confidentiality.

The defendants contend that maintaining the confidentiality of peer review proceedings is paramount to ensuring quality health care and that permitting discovery of such information will undermine the health care system by discouraging candid appraisals of other physicians. The defendants further contend that the hospital will no longer be able to persuade its physicians to participate in peer review if the proceedings are discoverable.

We disagree. First, the defendants have not presented even a scintilla of evidence substantiating these claims. Second, most physicians feel an ethical duty to the profession and to the public to keep the standard of health care high. Third, if participating in peer review proceedings periodically is made a requirement for maintaining staff privileges, it is doubtful that many physicians will uproot their practices simply to avoid serving on a peer review committee. And fourth, this Court does not hold that peer review proceedings are *always* discoverable in every case. We conclude only that a physician alleging that a health care facility discriminated against her is entitled to discovery of the peer review proceedings needed to prove her claim.

■ The defendants also contend that the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.,* reflects a federal policy precluding the discovery of peer review materials. Section 11137(b) of the Act provides for the confidentiality of certain information.

However, the defendants' contention is again without merit. First, the Health Care Quality Improvement Act of 1986 simply serves to create a national repository for information about a physician's past performance. *See Manthe v. Vanbolden,* 133 F.R.D. 497 (N.D.Tex.1991). A hospital may then request information regarding a certain doctor as it proceeds through the hiring or reviewing process. *Id.* The information provided to the repository then remains confidential unless state law permits disclosure. *Id.* Therefore, by its own terms, the Act does not apply to the matters currently before this Court.

Second, pursuant to 42 U.S.C. § 11111, the protections extended to those participating in peer review "shall not apply to damages under any law of the United States or any State relating to the civil rights of any person or persons, including the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Civil Rights Acts, 42 U.S.C. § 1981 et seq." 42 U.S.C.A. § 11111(a)(1) (1991 Supp.). As Representative Waxman, a principal sponsor of the Act, stated, "The immunity provisions have been restricted so as not to protect illegitimate actions taken under the guise of furthering the quality of health care. Actions that violate civil rights laws or actions that are really taken for anticompetitive purposes will not be protected under this bill." 141 *Cong. Record* H 9957 (Daily Ed. Oct. 14, 1986). Therefore, the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.,* cannot be construed as limiting discovery in a sex discrimination action.

Finally, the Act applies only when the physician is afforded all the protections set forth in § 11112(a) of the Act. *See* 42 U.S.C. § 11111(a)(1). Section 11112(a)(3) requires adequate notice and a hearing as defined in § 11112(b). Pursuant to § 11112(b)(3)(C)(i), the physician in question is entitled to be represented by an attorney at the hearing unless the physician voluntarily waives that right. However, in the case at bar, a representative of the Christ

Hospital Ad Hoc Hearing Committee informed Dr. LeMasters by letter that:

> The Bylaws of the Medical Staff, in Article XV, Section 15.50, Paragraph 15.510, address legal representation at a medical staff hearing and state, in part, that, ".. [sic] The affected practitioner, the Executive Committee, or the Board shall not be represented at the hearing by an attorney-at-law unless the hearing committee at its discretion permits both sides to be represented by counsel." The Ad Hoc Hearing Committee appointed to hear your medical staff appeal on February 17, 1990, has considered this matter and feels that the hearing proceedings will be more expedient and focused without the presence of attorneys.

Ex. 2 to doc. 59. Therefore, even if the Act applied to civil rights actions (which it does not), it would not apply to this action. Accordingly, we conclude that the Health Care Quality Improvement Act of 1986 does not require a federal privilege for hospital peer review proceedings in a Title VII action.

### Other Discovery Requests

In addition to the claimed peer review privilege, the defendants object to the Magistrate Judge's orders on the grounds that the discovery requests are irrelevant, overly broad or have already been answered. This Court has reviewed the transcript of the hearing before Magistrate Judge Sherman, Judge Sherman's orders, and the objections to those orders, and concludes that Magistrate Judge Sherman's orders are neither erroneous nor contrary to law. Accordingly, those orders must be affirmed in all respects.

### CONCLUSION

For the reasons set forth above, the Magistrate Judge's orders granting certain motions to compel are hereby affirmed. Magistrate Judge Sherman ordered the defendants to produce the peer review materials in question within three days of any order affirming his orders or be subject to a fine of $500 per day for every day that the materials are late (doc. 82). The defen-

dants request at least forty-five days in which to produce such documents (doc. 85). Although the materials in question were originally requested on August 12, 1991, and Magistrate Judge Sherman issued his order compelling production on October 24, 1991, due to the holiday season, this Court will extend the time in which the defendants must produce the materials through January 6, 1992. If, however, the defendants fail to produce the materials at plaintiff's counsel's office by January 6, 1992, counsel for the defendants will be subject to a fine of $500 per day until such materials are produced. In addition, because the peer review information produced should remain as confidential as possible, this Court hereby imposes a protective order requiring the plaintiff to maintain the confidentiality of the information produced except as needed for purposes of this litigation.

SO ORDERED.