**Leann HOLLAND, Plaintiff,**

v.

**MUSCATINE GENERAL HOSPITAL, and Robert Weis, Defendants.**

No. 3–96–CV–10075.

United States District Court, S.D. Iowa, Davenport Division.

June 3, 1997.

Dorothy A. O'Brien, Brooke & O'Brien, PLC, Davenport, IA, for Leann Holland.

Linda A. Whittaker, Stanley Lande & Hunter, Muscatine, IA, Roger A. Lathrop, Betty Neuman & McMahon, Davenport, IA, for Muscatine Gen. Hosp.

Linda A. Whittaker, Stanley Lande & Hunter, Muscatine, IA, Webb L. Wassmer, James A. Gerk, Simmons Perrine Albright & Ellwood, Cedar Rapids, IA, for Robert Weis.

## RULING ON PLAINTIFF'S MOTION TO COMPEL

WALTERS, United States Magistrate Judge.

The above resisted motion to compel is before the Court following hearing. It concerns the production of documents and information from physician peer review records. Subsequent to the hearing and at the Court's request, counsel for the defendant hospital forwarded the peer review records of Drs. Weis and Atwell for *in camera* review, as well as records concerning Dr. Weis previously produced by the hospital, and records concerning Dr. Atwell which the hospital proposes to produce subject to the approval of Dr. Atwell's counsel. The organization of the documents and accompanying cover letter from Ms. Schriver have been very helpful and much appreciated. The Court has now reviewed all of the *in camera* documents, and

has carefully considered the arguments and statements of counsel at hearing and their written submissions, as well as April 18, 1997 correspondence from Mr. Matthew G. Novak, counsel for Dr. Atwell.

## I.

This is a hostile work environment case in which plaintiff alleges violations of 42 U.S.C. § 2000e et seq. and Iowa Code Chapter 216 against her employer, the defendant Muscatine General Hospital. She sues defendant Weis for common law assault and battery, and negligence. The precipitating event was an incident in October 1995 in which plaintiff, an emergency room nurse, contends she was struck by Dr. Weis. This, other conduct of Dr. Weis, and that of Dr. Atwell, are allegedly responsible for the hostile work environment. The hospital apparently uses the peer review process to document, investigate and resolve employee complaints of mistreatment at the hands of physicians. Plaintiff has requested information of this type as it concerns her complaints about the doctors' conduct, and other information from the peer review files of Drs. Weis and Atwell. Defendants have resisted the broader aspects of plaintiff's discovery requests primarily on the basis of the state statutory privilege against the disclosure of peer review materials outside of the peer review context. The defendant hospital also raises the self-critical analysis privilege as a bar to disclosure.

The "malpractice" subchapter of the general Iowa statutory provisions pertaining to health and related professions contains a section on peer review committees and records, which includes the following language:

> Peer review records are privileged and confidential, are not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee and are not admissible in evidence in a judicial or administrative proceeding other than a proceeding involving licensee discipline or a proceeding brought by a licensee

who is the subject of a peer review record and whose competence is at issue.

Iowa Code § 147.135(2). The statute does "not preclude the discovery of the identification of witnesses or documents known to a peer review committee." *Id.* In addition, "[a]ny final written decision and finding of fact by a licensing board in a disciplinary proceeding is a public record." *Id.*

The confidentiality of peer review records is also addressed in Iowa Code Chapter 272C which pertains in part to the discipline of licensees by the various state licensing boards. Subsection 272C.6(4) states:

> In order to assure a free flow of information for accomplishing the purposes of this section ... all complaint files, investigation files, other investigation reports, and other investigative information in the possession of a licensing board or peer review committee acting under the authority of a licensing board or its employees or agents which relates to licensee discipline are privileged and confidential, and are not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards, their employees and agents involved in licensee discipline, and are not admissible in evidence in a judicial or administrative proceeding other than the proceeding involving licensee discipline.

Under the express language of these provisions, peer review records, including complaints and investigative information, are "privileged and confidential" and are not subject to discovery in Iowa's courts.

 As the parties recognize, the state statutory peer review privilege is not conclusive in an action brought in federal court under federal law. Federal Rule of Evidence 501 governs questions of privilege in this court. It is not very definitive. Unless the federal constitution, a federal statute, or court rule is determinative, whether a privilege is recognized is committed to the "principles of the common law" as interpreted by the courts "in light of reason and experience."[1] The recognition of new privileges in

---

1. If the claim or defense is based on state law, the question of privilege is determined in accordance with state law. Fed.R.Evid. 501.

federal court thus evolves on a case-by-case basis. *See Jaffee v. Redmond,* — U.S. ——, ——, 116 S.Ct. 1923, 1927, 135 L.Ed.2d 337 (1996). The process involves "balancing the public's need for the full development of relevant facts in federal litigation against the countervailing demand for confidentiality in order to achieve the objectives underlying the privilege in issue." 2 J. Weinstein, M. Burger, J. McLaughlin, *Weinstein's Evidence* ¶ 501[03], at 39–41. The balance does not often favor recognition of a new privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *University of Pennsylvania v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990) (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912–13, 63 L.Ed.2d 186 (1980)). The starting point in the analysis is always the "fundamental principle that 'the public ... has a right to every man's evidence.'" *Id.* (quoting both *Trammel,* 445 U.S. at 50, 100 S.Ct. at 912 and *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)). Privileges are disfavored in the law and must be strictly construed. *Id.*

 State law is not irrelevant. The public policy of the states as reflected in their legislative and judicial pronouncements is part of the "reason and experience" which may be drawn on in considering claims of privilege. *Jaffee,* — U.S. at ——, 116 S.Ct. at 1930. Even when not federally adopted, privileges provided by the law of the forum state should be respected to the extent "this can be accomplished at no substantial cost to federal substantive and procedural policy." *Hansen v. Allen Memorial Hosp.,* 141 F.R.D. 115, 122 (S.D.Iowa 1992) (quoting *Memorial Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981)).

 The Court does not believe either that a federal peer review privilege, or Iowa's peer review privilege, should be recognized to prevent disclosure of documents and information which have a close degree of relevance to a hospital's knowledge and investigation of the conduct of physicians which has allegedly resulted in employment discrimination in violation of federal law. Disclosure of documents and information bearing primarily on employment issues does not materially conflict with the fundamental objective of promoting quality health care served by the peer review privilege. The purpose of the peer review privilege is to "encourage an effective review of medical care." *Carolan v. Hill,* 553 N.W.2d 882, 886 (Iowa 1996). Though the privilege is broad, the policy reasons for it are focused on promoting quality medical care by enabling physicians to consult with and criticize one another without risk of repercussions in order to improve future treatment. *See Hutchinson v. Smith Lab., Inc.,* 392 N.W.2d 139, 140–41 (Iowa 1986). Peer review also assists in weeding out those who are providing substandard care. *Id.* The Iowa Code provides textual support for this core purpose. "Peer review" is defined as the "evaluation of professional services rendered by a person licensed to practice a profession." Iowa Code § 147.1(8). "Licensee discipline" is defined in Chapter 272C as "any sanction a licensing board may impose upon its licensees for conduct which threatens or denies citizens of this state a high standard of professional or occupational care." Iowa Code § 272C.1(4). Presumably, the term means the same when used in Chapter 147. *See* Iowa Code § 147.135(2). The use of the peer review process to document and investigate complaints by hospital employees of discrimination or harassment by physicians bears an indirect relationship to the quality of medical care—turmoil in the hospital setting can affect how patients are treated—but the interest in promoting quality medical care is not much served by protecting information of this type from disclosure in an employment discrimination action.[2]

---

2. There is no reason to invoke the peer review privilege with respect to the alleged October 1995 assault by Dr. Weis. A discrete event was involved. The witnesses and what they had to say about it are known. A criminal investigation and prosecution ensued. With this much in the open, the free flow of peer review information will not be restricted by allowing discovery of the hospital's investigation of the incident. That the facts about the incident are available from other sources is not, however, a reason to avoid resort to peer review material. What the hospital knew and did about the incident is directly relevant to her hostile work environment claim.

If the purpose of the peer review privilege is not directly implicated in the present context, the public policy served by Title VII weighs heavily on the other side of the scale, and particularly where a hostile work environment is alleged. Plaintiff must prove management level employees knew or should have known of the circumstances creating the environment, and failed to take proper remedial action. *See Gillming v. Simmons Indus.,* 91 F.3d 1168, 1171–72 (8th Cir.1996). When the peer review system is used to document or investigate workplace conflicts alleged to have caused a hostile work environment, the best evidence of corporate knowledge and the remedial action implemented will be found in the peer review file. The adequacy of the peer review investigation itself is in issue. *See Shadur,* 664 F.2d at 1062–63. If the asserted privilege walls this information off from discovery, it becomes a direct impediment to the vindication of important federal substantive rights. As indicated previously, the legitimate state interests served by the peer review privilege do not require this result, and the countervailing federal interest in enforcing Title VII's promise of equal employment opportunity is compelling. *See EEOC,* 493 U.S. at 193, 110 S.Ct. at 584; *LeMasters v. Christ Hosp.,* 791 F.Supp. 188, 191 (S.D.Ohio 1991).

■ The hospital contends that recognition of a peer review privilege is consistent with the federal Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101 et seq.. The relevant provisions of the HCQIA require reporting to the Secretary of Health and Human Services of, among other things, sanctions by state boards of medical examiners and "professional review actions" taken by health care entities. 42 U.S.C. §§ 11132(a), 11133(a). The information reported is confidential. *Id.* § 11137(b)(1).[3] The statute both provides a clearinghouse for information bearing on the "competence or professional conduct" of individual physicians, and requires hospitals to obtain information about a physician periodi-

cally and at the time the physician applies to be on a medical staff or for clinical privileges. *Id.* §§ 11132(a), 11132(b), 11135(a), 11151(9). *See Pagano v. Oroville Hosp.,* 145 F.R.D. 683, 693 (E.D.Cal.1993). The definition of a "professional review action" indicates the statute is directed at the reporting of physician conduct which "affects or could affect adversely the health or welfare of a patient or patients." *Id.* § 11151(9). Here again, the focus is on patient care. Nothing in the relevant provisions of the HCQIA suggests Congress intended to encourage employment discrimination claims involving physicians be investigated through the peer review process, or intended to cloak such investigations with confidentiality. To the contrary, the statutory immunity of persons participating in professional review actions specifically does not include "damages under any law of the United States or any State relating to the civil rights of any person or persons, including the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq...." 42 U.S.C. § 11111(a)(1). This exception is a fairly clear indication that the HCQIA is not intended to interfere with the prosecution of civil rights actions. *See LeMasters,* 791 F.Supp. at 191 (HCQIA "cannot be construed as limiting discovery in a sexual discrimination action").

■ The hospital next argues the "self-critical" analysis privilege protects against the disclosure of peer review information. The self-critical analysis privilege has had an ambiguous existence, neither uniformly adopted nor rejected. The privilege had its genesis in a malpractice discovery dispute in which plaintiff sought peer review records. *See Bredice v. Doctors Hosp. Inc.,* 50 F.R.D. 249, 250 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973) (unpublished table decision). It has not yet satisfied the test of reason and experience so as to be generally recognized under Fed.R.Evid. 501. Judge Bennett has suggested that the self-critical analysis privilege generally has no applicability in employment discrimination litigation. *See Tharp v.*

---

**3.** Information reported under the Act is confidential, however, the Act does not establish a general rule of confidentiality for peer review records. *Robertson v. The Neuromedical Ctr.,* 169 F.R.D. 80, 84 (M.D.La.1996); *Pagano v. Oroville*

*Hosp.,* 145 F.R.D. at 693 (citing *LeMasters,* 791 F.Supp. at 191; *Wei v. Bodner,* 127 F.R.D. 91, 99 (D.N.J.1989)). The parties do not indicate what information from the disputed peer review records, if any, was reported to the Secretary.

*Sivyer Steel Corp.,* 149 F.R.D. 177, 182, 185 (S.D.Iowa 1993). Often that is the result, but even if not privileged, legitimate self-critical analysis material should in appropriate circumstances be treated as confidential business information. This does not, however, mean such information should be protected from all discovery. Here, too, a balancing of interests is involved.

The case for protecting self–critical analysis material exists only where, under the particular circumstances, the public has "a strong interest in preserving the free flow of the type of information sought" and the information is of such a type "whose flow would be curtailed if discovery were allowed." [*Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 426 (9th Cir. 1992)]. Even where these factors are present, in the balancing of interests the need for disclosure must be outweighed by the interests served in preventing disclosure. *See University of Pennsylvania v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990). Thus, the privilege, such as it may be, is not absolute. *See In re Crazy Eddie Securities Litigation,* 792 F.Supp. 197, 205 (E.D.N.Y. 1992). Further, it must be narrowly construed to include only "the analysis or evaluation itself, not ... the facts upon which the evaluation is based...." *Id.*

*Gatewood v. Stone Container Corp.,* 170 F.R.D. 455, 459 (S.D.Iowa 1996); *see Todd v. South Jersey Hosp. Sys.,* 152 F.R.D. 676, 682–83 (D.N.J.1993). This case is a poor one for invocation of any sort of self-critical analysis privilege with respect to the hospital's investigation and knowledge of the difficulties Holland and other similarly situated employees had with Dr. Weis and Dr. Atwell. The information is directly relevant to the elements of Holland's claim involving the hospital's knowledge and the fact and efficacy of remedial action. The hospital is under a legal duty to respond to hostile work environment complaints. Disclosure is not likely to impede the free flow of information, indeed, it is in the hospital's interest to document and disclose its efforts to investigate and respond to such complaints. *See Tharp,* 149 F.R.D. at 182–183. Finally, the Court's review of the relevant peer review material

indicates that the great preponderance of it is factual and not truly self–critical in nature.

■ Dr. Weis argues that because the claims against him are based exclusively on state law, the state peer review privilege directly applies under that portion of Fed. R.Evid. 501 which states "with respect to an element of a claim or defense as to which State law applies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Weis, however, is a party in an action which primarily involves federal claims arising out of the same transactions and occurrences as the common law claims against him. He is obligated to respond to discovery with respect to the federal claims the same as the hospital is with respect to the claims against him. Where an action involving primarily federal law includes pendent state law claims, the existence and scope of a claimed privilege is governed by the federal rules. *See Le-Masters,* 791 F.Supp. at 189; *Hansen,* 141 F.R.D. at 121.

■ All documents in the peer review files of Drs. Weis and Atwell which concern the October 1995 incident or complaints generally by or about plaintiff and concerning her working environment or the performance of her job responsibilities should be produced. Some of the incidents involving plaintiff resulted from disputes related to patient care. Also, some of the conduct of which plaintiff complains is related to the perception of others about her professional abilities. Peer review information of this type which has mixed employment and patient care features involving plaintiff should be produced unless from the face of the document it appears Ms. Holland's involvement was purely incidental to peer review investigation of an incident involving patient care.

Some of the information in Dr. Atwell's peer review file concerns similar complaints by other hospital employees of Dr. Atwell's treatment of them. Similar incidents involving other employees may be relevant to the knowledge of the hospital and the effectiveness of any remedial actions. As long as

these documents were generated primarily to record or address employee complaints about the work environment rather than for the purpose of reviewing patient care issues, the documents should be produced.[4]

 To the extent plaintiff's discovery requests go beyond the type of employment issues discussed above, the relevancy of the information to plaintiff's claims becomes more attenuated and, correspondingly, the interest in preserving the confidentiality of peer review records becomes more germane. The balance of interests with respect to peer review documents which do primarily concern patient care issues weighs in favor of protecting their confidentiality.

## II.

Having rejected many of defendants' arguments with respect to the applicability of the peer review and self–critical analysis privileges, with the exception of a handful of documents concerning the October 1995 incident, the Court nonetheless finds itself in general agreement with the hospital's proposals concerning what specific documents submitted for *in camera* review ought to be produced to plaintiff. Counsel for the hospital has divided the documents into four groups. The first concerns the October 1995 incident with Dr. Weis. These documents are contained in the peer review file and have been previously been produced to plaintiff. The second category consists of Dr. Weis' full peer review file. None of these documents need to be produced except the remainder of those documents relating to the hospital's investigation of the October 1995 incident, document nos. PR1155 through PR1176, inclusive. Documents relating exclusively to proceedings before the State Board of Medical Examiners, nos. 1177 through 1182 need not be produced unless otherwise a matter of public record. The third group of records are documents concerning Dr. Atwell which the hospital has proposed to produce and tendered to Dr. Atwell's counsel for approval. Many of these documents are also contained in Dr. Atwell's peer review file. They relate to complaints by and about plaintiff and other employees involving primarily employment rather than patient care issues. Unless Dr. Atwell wishes to be heard further on the matter, the Court agrees this group of documents should be produced. The last group of documents consists of Dr. Atwell's full peer review file. Except to the extent these documents are also included in the third group, they are not subject to discovery as they deal primarily with patient care issues.

Subject to the foregoing discussion, the motion to compel is granted with respect to requests for production nos. 2, 3, and 11 directed to the hospital and is denied with respect to request for production nos. 4 and 6 (as narrowed) to the extent the latter seek peer review documents beyond those the Court has ordered produced. The objection that request for production no. 10 is unclear is sustained. "All papers relied on" in answering an entire set of interrogatories does not describe the documents with the required "reasonable particularity." Fed.R.Civ.P. 34(b).

The motion to compel is granted with respect to interrogatory nos. 6, 7, and 8 directed to the defendant hospital except, with respect to interrogatory no. 8, the hospital need not respond concerning complaints which relate primarily to the professional competence of Drs. Atwell and Weis as physicians, or the quality of medical care provided by them. All complaints within the scope of the interrogatory relating to any alleged mistreatment of a hospital employee by Drs. Atwell or Weis shall be disclosed. The motion to compel is granted with respect to interrogatory no. 6 directed to Dr. Weis.

The hospital has also objected to the disputed discovery requests generally on grounds of attorney–client, work product, and hospital/patient privilege. The attorney–client and work product objections are not yet ripe for determination, and this ruling does not address them. Defendants may withhold from production all documents they claim are subject to these privileges but, at

---

4. This would apply also in the case of Dr. Weis, though in reviewing his peer review file *in camera* the Court did not note any complaints by

others which did not relate primarily to patient care.

the time of the production of documents and supplementation of discovery responses required by this ruling, shall provide counsel for plaintiff with a privilege log complying with the requirements of Fed.R.Civ.P. 26(b)(5). If there is an unresolved dispute about any information withheld on these grounds, the Court will take it up by separate motion if necessary. If there is concern about the confidentiality of patient information, defendants may redact the identity of patients from hospital and other records produced to plaintiff substituting, where appropriate, a letter or numerical code to identify the patient or patients.

By separate correspondence, counsel for Dr. Atwell requests an opportunity to be heard with respect to documents produced from his peer review file As indicated, the confidentiality of Dr. Atwell's peer review file will be protected except to the extent indicated above. The documents concerning Dr. Atwell which are subject to production under this ruling have previously been provided to Dr. Atwell's counsel for review—the category three documents. If Dr. Atwell wishes to be heard further with respect to the production of this information, the Court will afford that opportunity upon request filed within fourteen (14) days.

In her cover letter, Ms. Schriver requests that any records produced be subject to a protective order. This request is granted, and the parties shall confer and present a proposed protective order.

In view of the foregoing, the following orders are entered:

(1) Plaintiff's motion to compel is granted in part and denied in part as provided in the body, of this ruling. Defendants shall produce documents and supplement their discovery responses in compliance with this ruling within **twenty (20) days** of the date hereof provided, however, such production and supplementation may be delayed for a reasonable time in order to prepare and present an agreed protective order or to allow further opportunity for hearing if requested by Dr. Atwell's counsel;

(2) The Clerk shall send a copy of this ruling to counsel for Dr. Atwell, Mr. Matthew G. Novak, Pickens, Barnes & Abernathy, 10th Floor American Building, 101 Second Street S.E., P.O. Box 74170, Cedar Rapids, IA 52407–4170. Mr. Novak's correspondence to the Court dated April 18, 1997 shall be filed under seal. Dr. Atwell may have **fourteen (14) days** from the date hereof to file a request to be heard further with respect to partial disclosure of material form his peer review file provided by this ruling.

(3) Ms. Schriver's March 28, 1997 correspondence shall be filed under seal. The *in camera* documents will be retained in my chambers for the time being.

IT IS SO ORDERED.