OPINION *Page 2 
{¶ 1} Appellants, Mercy Hospital Fairfield, Mercy Hospital Clermont, and Mercy Ambulatory Surgery Center (collectively, "Mercy"), appeal the judgment of the Hamilton County Court of Common Pleas denying motions to quash subpoenas in an action filed by plaintiff-appellee, Dave Wright, M.D., against defendants, Perioperative Medical Consultants and Jeffrey Philip, M.D. (collectively, "PMC").
 WRIGHT'S LAWSUIT AND THE SUBPOENAS {¶ 2} Wright was employed by PMC, a medical-practice firm. In 2004, he filed an action alleging that PMC had wrongfully denied him partnership in the firm. Wright's complaint listed causes of action for fraud, negligent misrepresentation, promissory estoppel, and breach of contract. The essence of the complaint was that PMC had breached an agreement to offer partnership to Wright after two years of employment.
 {¶ 3} In its answer, PMC stated that its refusal to offer partnership to Wright was based upon his "own actions and omissions," and that his "treatment was not disparate from the treatment of other similarly situated individuals."
 {¶ 4} During the discovery process, Wright sent subpoenas to Mercy seeking "incident reports, * * * notices and/or legal complaints alleging malpractice, written complaints, or written summaries of verbal complaints" concerning 11 other physicians employed by or associated with PMC.
 {¶ 5} Wright's purpose in seeking the documents from Mercy was apparently to rebut PMC's assertion that he had not been treated differently from similarly situated physicians. In other words, Wright sought to demonstrate that the *Page 3 
evaluations compiled by Mercy would have indicated that his performance was of equal or superior quality to the other PMC physicians. It is undisputed that Mercy was never joined as a party to the lawsuit.
 {¶ 6} Mercy filed motions to quash the subpoenas, arguing, among other things, that the records, such as incident reports, risk-management reports, peer-review reports, quality-assurance reports, and similar documents, were privileged, and that the production of the records would have been unduly burdensome.
 OUR STANDARD OF REVIEW {¶ 7} The trial court denied Mercy's motions to quash the subpoenas. In a single assignment of error, Mercy now argues that the trial court erred in denying the motions.
 {¶ 8} The parties have narrowed the issue of privilege to three distinct categories of documents: peer-review records, quality-assurance records, and risk-management records. We address the categories separately.
 {¶ 9} In general, a trial court's order concerning discovery matters will not be reversed absent an abuse of discretion.[1] But if the trial court's discovery order involves the application or construction of statutory law, we review the order de novo.[2]
 {¶ 10} Although Civ.R. 45 permits a party to subpoena documents from a nonparty, the trial court must quash a subpoena if it "[r]equires disclosure of *Page 4 
privileged or otherwise protected matter and no exception or waiver applies,"[3] or if the subpoena "[s]ubjects a person to undue burden."[4]
 PEER-REVIEW REPORTS {¶ 11} In this case, we hold that the peer-review reports were privileged and that their production would have been unduly burdensome.
 {¶ 12} R.C. 2305.252, the statute governing privilege for peer-review reports, provides that "[proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity * * * arising out of matters that are the subject of evaluation and review by the peer review committee."
{¶ l3} In this case, Wright sought materials that were intended to demonstrate that his performance was comparable to that of the other 11 PMC physicians. Accordingly, the materials concerned matters that were the "subject of evaluation and review by the peer review committee" and fell within the ambit of the statutory privilege.
 {¶ 14} But Wright cites LeMasters v. The Christ Hosp.[5] for the proposition that, in a case alleging employment discrimination, a physician is entitled to peer-review records to demonstrate disparate treament. In LeMasters, the plaintiff had sought peer-review records from the hospital to demonstrate that it had treated her differently from other physicians.[6] The LeMasters court held that the plaintiffs *Page 5 
interrogatories were proper because the plaintiff's interest in demonstrating discrimination outweighed the statutory protection for peer-review materials.[7]
 {¶ 15} Wright's reliance on LeMasters is misplaced. Here, Wright did not argue that Mercy had treated him differently from other physicians: Mercy had not been Wright's employer, it was not a party to the action, and it was not accused of any wrongdoing.
 {¶ 16} In fact, Wright did not even claim that PMC had engaged in disparate treament. It was PMC's defense that it had not treated Wright differently.
 {¶ 17} Therefore, the exception created in LeMasters was inapplicable to the case at bar. To the extent that PMC had relied on peer-review reports to establish the consistent treatment of its physicians, the burden was on PMC to provide the reports. And if PMC had not relied on peer-review material to justify its actions, any such material in Mercy's custody would have been irrelevant.
 {¶ 18} Placing the onus on a nonparty to provide discovery that is either privileged or available elsewhere would abrogate R.C. 2305.252
and would be unduly burdensome under Civ.R. 45(C)(3)(d). Accordingly, we hold that the trial court erred in denying the motions to quash the subpoenas for the peer-review records.
QUALITY-ASSURANCE RECORDS
 {¶ 19} Similarly, the records maintained by the hospital's quality-assurance committee were confidential. R.C. 2305.24 states that "[a]ny information, data, reports, or records made available to a quality assurance committee or utilization committee of a hospital * * * are confidential and shall be used by the committee and *Page 6 
the committee members only in the exercise of the proper functions of the committee."
 {¶ 20} Here, because there were no applicable exceptions to the broad privilege enacted in R.C. 2305.24,[8] we hold that the trial court erred in refusing to quash the subpoenas for the quality-assurance records.
 INCIDENT REPORTS {¶ 21} Finally, we turn to the subpoenaed incident reports. R.C.2305.253(A), the statute governing the privilege for incident reports and risk-management reports, provides that "notwithstanding any contrary [statutory provisions], an incident report or risk management report and the contents of an incident report or risk management report are not subject to discovery in, and are not admissible in evidence in the trial of, a tort action."
 {¶ 22} Though this privilege has been broadly applied in tort actions,[9] Wright argues that the instant lawsuit sounded in contract, and not in tort. Mercy replies that because Wright's complaint included causes of action for fraud and negligent representation, the privilege arising in tort actions applied in this case.
 {¶ 23} We agree with Wright that the gravamen of the complaint was that PMC had violated the parties' written employment contract; the tort actions were merely incidental to the dispute. So arguably the R.C.2305.253(A) privilege did not apply. *Page 7 
 {¶ 24} But even if the statutory privilege did not apply in this case, we nonetheless hold that the subpoenas for the incident reports were unduly burdensome.
 {¶ 25} As we stated with respect to the peer-review documents, PMC was the party asserting that its treatment of Wright was comparable to that of its other physicians. If PMC had not been granted access to the incident reports in Mercy's possession, it could not claim reliance on those documents as a basis for refusing to grant partnership to Wright. If PMC did possess those materials, PMC, and not Mercy, bore the responsibility of producing them.
 {¶ 26} Accordingly, we hold that the trial court erred in denying Mercy's motions to quash the subpoenas, and we sustain the assignment of error.
 CONCLUSION {¶ 27} We reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
SUNDERMANN and DlNKELACKER, JJ., concur.
[1] See, e.g., Quinton v. MedCentral Health Sys., 5th Dist. No. 2006CA0009, 2006-Ohio-4238, at ¶ 13, jurisdictional motion overruled,112 Ohio St.3d 1421, 2006-Ohio-6712, 639 N.E.2d 559, citing Arnold v. Am.Natl. Red Cross (1994), 93 Ohio App.3d 564, 639 N.E.2d 484.
[2] Quinton, supra, at ¶ 13, citing Huntsman v. Aultman Hosp.,160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384, jurisdictional motion overruled, 106 Ohio St.3d 1506, 2005-Ohio-4605, 833 N.E.2d 1248.
[3] Civ.R. 45(C)(3)(b).
[4] Civ.R. 45(C)(3)(d).
[5] (S.D.Ohio 1991), 791 F.Supp. 188.
[6] Id. at 191.
[7] Id.
[8] See, e.g., Doe v. Mt. Carmel Health Sys., 10th Dist. No. 05AP-435,2005-Ohio-6966, at ¶ 21, jurisdictional motion overruled,109 Ohio St.3d 1480, 2006-Ohio-2466, 847 N.E.2d 1226.
[9] See, e.g., DePaul v. St. Elizabeth Health Ctr., 7th
Dist. No. 03 MA 137, 2004-Ohio-4992, at ¶ 10. *Page 1