## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-IA-00342-SCT

*ELIZABETH CLAYPOOL AND MICHAEL D. CLAYPOOL*

*v.*

*JOHN P. MLADINEO, M.D., AND RIVER OAKS HOSPITAL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/96 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GAIL S. AKIN |
| ATTORNEYS FOR APPELLEES: | GEORGE H. RITTER |
| | WHITMAN B. JOHNSON, III |
| | REBECCA B. COWAN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 12/10/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/31/98 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Elizabeth and Michael D. Claypool bring this interlocutory appeal before this Court from a medical malpractice case filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Due to injuries suffered as a result of surgery, the Claypools have sued Dr. John P. Mladineo for medical malpractice and River Oaks Hospital, Inc. for negligently granting Mladineo hospital privileges and failing thereafter to revoke those privileges.

¶2. During discovery the Claypools requested certain documents from both Mladineo and River Oaks. Both defendants objected claiming the documents were confidential and privileged according to § 41-63-9 and § 41-63-23. Similar objections were made at the depositions of Mladineo and River Oaks' 30(b)(6) representative.

¶3. Motions for Protective Order were filed by Mladineo and River Oaks. The Claypools responded by

requesting the documents be produced to the court for an in camera inspection. After a hearing, the lower court entered an Order, ruling that all the documents submitted for the in camera inspection were protected because they constituted either proceedings or records of medical review committees or accreditation and quality assurance materials that were deemed to be confidential and not subject to discovery or introduction into evidence pursuant to Miss. Code Ann. § 41-63-9 and § 41-63-23.

¶4. Aggrieved by the lower court's ruling, the Claypools filed their Motion for an Order Allowing Certification for Interlocutory Appeal. After conducting a hearing on the Claypools' Motion, the lower court declined to certify the interlocutory appeal. The Claypools petitioned this Court to grant an interlocutory appeal and to stay the proceedings in the lower court. This Court granted the appeal and stayed the lower court proceedings pending the disposition of the interlocutory appeal. The Claypools raise the following issues:

> **I. WHETHER MISS. CODE ANN. § 41-63-9 AND § 41-63-23 ARE PERMISSIBLE LEGISLATIVE ACTS.**

> **II. WHETHER THE PRIVILEGES CREATED UNDER MISS. CODE ANN. § 41-63-9 AND § 41-63-23 WERE CORRECTLY INTERPRETED BY THE TRIAL JUDGE.**

¶5. After reviewing the statutory language, along with prior holdings of this Court, we find that the Legislature clearly had the authority to enact Miss. Code Ann. § 41-63-9 and § 41-63-23, but the trial judge erred in granting such a broad interpretation to the statutes. We reverse the trial judge's decision to prevent certain documents from being discovered, and remand the case for further proceedings. Any further application of Miss. Code Ann. § 41-63-9 and § 41-63-23 should be consistent with the findings and interpretations of this Court.

## STATEMENT OF THE FACTS

¶6. Elizabeth Claypool was diagnosed by Dr. Brooks Griffin as having cervical cancer in 1993. She was referred to Mladineo, a specialist in gynecologic oncology. Mladineo informed Mrs. Claypool that she could either undergo radiation therapy, which he did not recommend, or a radical hysterectomy, which he did recommend. Mladineo recommended the surgery be performed at River Oaks Hospital, where he was a member of the medical staff.

¶7. On April 6, 1993, Mladineo performed a radical hysterectomy on Mrs. Claypool at River Oaks Hospital. After the surgery, Mrs. Claypool developed a fistula that caused various complications throughout the summer of 1993. The Claypools felt Mrs. Claypool was receiving improper treatment and as a result sought treatment from another doctor. Mrs. Claypool's fistula was repaired, but due to continued complications she ultimately lost a kidney.

¶8. The Claypools filed suit against Mladineo claiming that he should not have performed the radical hysterectomy once he realized the extent to which Mrs. Claypool's cancer had progressed. Further, the Claypools allege that River Oaks Hospital should not have allowed Mladineo to practice medicine at its hospital.

¶9. During the course of discovery, the Claypools propounded three sets of document requests, three sets of interrogatories, and multiple requests for admissions upon River Oaks. River Oaks has filed multiple responses and supplemental responses to the Claypools' discovery requests. The Claypools propounded

one set of interrogatories and one set of request for production of documents to Mladineo. The Claypools took the depositions of Mladineo and the 30(b)(6) representative of River Oaks Hospital.

¶10. It is these discovery requests which have led to this interlocutory appeal. The Claypools sought discovery of materials River Oaks and Mladineo claimed were medical or peer review records maintained by the hospital on Mladineo as well as quality assurance records kept by the hospital. The Claypools also requested information from Mladineo concerning the status of his hospital privileges for the last ten years. Both River Oaks and Mladineo objected to the requested information and documents based upon Miss. Code Ann. § 41-63-9 and § 41-63-23. Similar objections were made at the depositions of Mladineo and the 30(b)(6) representative of River Oaks.

¶11. The Claypools filed a Motion to Compel River Oaks to provide the requested information. Alternatively, they requested the court to require River Oaks to produce all documents requested for an in camera inspection in order to determine whether the requested documents could be discovered. River Oaks and Mladineo filed a Motion for Protective Order asserting that the documents and information requested consisted of medical and peer review committee proceedings and quality assurance records which were classified as confidential and non-discoverable according to Miss. Code Ann. § 41-63-9 and § 41-63-23, state public policy, and the common law. River Oaks and Mladineo submitted the documents in question to the court for an in camera inspection.

¶12. Following a hearing the lower court entered an Order sustaining the objections of River Oaks and Mladineo to the discovery of the peer review proceedings and records and denying the Claypools' Motion to Compel. Specifically the court found that

> all of the documents submitted in camera by the Defendant Hospital and Defendant John P. Mladineo, M.D. constitute either proceedings and medical records of medical review committees or accreditation and quality assurance materials and are, therefore, confidential and not subject to discovery or introduction into evidence pursuant to Miss. Code Ann. §§ 41-63-9, 41-63-23 and shall not be produced to the Plaintiffs.

¶13. The Claypools then sought to have an interlocutory appeal on this issue certified by the lower court, which was denied. Subsequently, they petitioned this Court for, and received, an interlocutory appeal on the issue.

## DISCUSSION OF THE ISSUES

### I. WHETHER MISS. CODE ANN. § 41-63-9 AND § 41-63-23 ARE PERMISSIBLE LEGISLATIVE ACTS.

¶14. At issue in this case is whether the Legislature may enact statutes which create certain privileges which first appear to impede both the discovery portions of the Mississippi Rules of Civil Procedure and the privileges enumerated in the Mississippi Rules of Evidence. The Court finds that the statutes do not impede either of the judicially created rules of procedure or evidence.

¶15. The Legislature enacted Miss. Code Ann. § 41-63-9 and § 41-63-23 as part of the substantive law of this state for the "express legislative purpose of promoting quality patient care through accreditation and quality assurance functions." Miss. Code Ann. § 41-63-29 (Supp. 1997). Mrs. Joanne Iacaboni, Director

of Health Information and Medical Staff Services at River Oaks, stated in her affidavit:

> Maintaining the confidentiality of these records is necessary in order to promote effective peer review and quality assurance programs at the Hospital. In my opinion, if the confidentiality of these documents is breached, then physicians and other practitioners will be reluctant to participate on medical staff committees or to come forward with complaints about medical staff members. This would have a detrimental effect on the hospital's and the medical staff's ability to self-police the quality of care provided at the hospital. The people who have participated on these medical review committees and who have provided information to these committees have done so with the expectation that such information would remain confidential.

¶16. The Legislature wanted to promote self-policing among the medical profession. In order to foster such a process the Legislature enacted Miss. Code Ann. § 41-63-9 and § 41-63-23. The language of each is set forth below.

> **Miss. Code Ann. § 41-63-9. Discovery and admissibility into evidence of proceedings and records of review committees.**
>
> (1) Notwithstanding any conflicting statute, court rule or other law, in order to encourage medical and dental review activity, the proceedings and records of any medical or dental review committee shall be confidential and shall not be subject to discovery or introduction into evidence in any civil action arising out of the matters which are the subject of evaluation and review by such committee. No person who was in attendance at a meeting of such committee shall be permitted or required to testify in any civil action regarding any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions or other actions of the committee or its members. However, information, documents or records otherwise discoverable or admissible from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during the proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to other matters within his knowledge. Provided, however, a witness shall not be questioned concerning his participation on or testimony before such committee or opinions formed by him as a result of such committee hearings or proceedings.
>
> (2) The provisions of subsection (1) of this section which limit the discovery of medical or dental review committee records and proceedings shall not apply in any legal action brought by a medical or dental review committee to restrict or revoke a physician's license to practice medicine or hospital staff privileges, or in any legal action brought by an aggrieved physician against any member of the committee or the legal entity which formed such committee for actions alleged to have been malicious.
>
> (3) The provisions of this statute, including the confidentiality provided in this subsection, shall be deemed part of the substantive law of this state enacted for the expressed legislative purpose of promoting quality patient care through medical and dental peer review activities.

Miss. Code Ann. § 41-63-9 (Supp. 1997).

> **Miss. Code Ann. § 41-63-23. Accreditation and quality assurance materials of health care organizations; discovery or introduction into evidence in civil actions; admissibility of**

**testimony relating to preparation, evaluation or review of materials; admissibility of documents from original sources.**

Accreditation and quality assurance materials, as defined in Sections 41- 63-21 through 41-63-29, shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against the health care professional or institution. No person involved in preparation, evaluation or review of accreditation or quality assurance materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation or quality assurance or other person involved therein. Information, documents or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation or quality assurance materials, nor should any person involved in preparation, evaluation or review of such materials be prohibited from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation or review of accreditation or quality assurance materials.

Miss. Code Ann. § 41-63-23 (Supp. 1997).

¶17. It is settled that the Legislatures of the states have the power to enact proper laws to regulate and provide for the safety, the health, the morals, and the general welfare of the public. *State v. J.J. Newman Lumber, Co.*, 102 Miss. 802, 821, 59 So. 923, 925 (1912). "The legislature, by virtue of the police power of the state, may enact all needful laws for the purpose of preserving the health, preventing the spread of disease, and protecting the lives of the citizens." *Hawkins v. Hoye*, 108 Miss. 282, 288, 66 So. 741, 743 (1914). "The legislature conferred upon the state board of health the power to make reasonable rules and regulations for the prevention of diseases and the protection of the health of the people." *Id.* The State under its police power "has very large authority and discretion as to the recognition of public needs, and may provide for them by suitable legislation." *Tatum v. Wheeless*, 180 Miss. 800, 824, 178 So. 95, 101 (1938). "This state has often exercised this power in the regulation or management of business affecting public welfare, and has enacted laws in restraint of acts deemed inimical to the public welfare or not promotive of the public good."*Id*.

¶18. Pursuant to Miss. Code Ann. § 41- 9-11 (1993), the licensing of state hospitals is performed by the Mississippi Department of Health. Pursuant to Miss. Code Ann. § 41-9-17 (1993), the Department of Health promulgates rules and regulations governing the licensing and standards for the operation of hospitals in Mississippi. These regulations, known as the Minimum Standards of Operation for Mississippi Hospitals (M.S.O.M.H.), require each hospital to establish a medical staff which has the overall responsibility for the quality of medical care provided to patients in the hospital. M.S.O.M.H. § 501. Hospital governing boards are required to delegate to their medical staffs the responsibility for evaluation of the professional competence of their fellow medical staff members. M.S.O.M.H. § 405.

¶19. The minimum standards do not require the medical staff to be employees of the hospital. Normally, they are private practitioners with permission to provide specified services in the hospital. This permission comes in the form of specified clinical privileges granted to individual medical staff members.

¶20. The evaluation of the competence and qualification of medical staff members is most often performed in the appointment and reappointment procedures specified in the medical staff bylaws. These procedures

are required pursuant to § 301(F) and § 506.1 of the M.S.O.M.H. The medical staff bylaws establish committees for the review of qualifications and competence of applicants for medical staff membership and current medical staff members. This evaluation typically occurs in the first instance on application for appointment to the medical staff when the applicant's qualifications are reviewed by a credentials committee. The credentials committee makes a recommendation to the medical staff executive committee which in turn makes a recommendation to the hospital board. Similar procedures are followed every two years as part of the reappointment process.

¶21. Typically, medical staff members form various medical committees for the purpose of performing routine reviews of the quality of care provided by the physicians on the medical staff. These medical or peer review committees will review specific charts, complaints, and quality assurance reports concerning individual practitioners and where necessary appropriate recommendations are made to the medical staff executive committee and hospital board.

¶22. Self-policing by medical committees[1] is encouraged by providing protection to the proceedings and records of the medical review committees and quality assurance materials. Health care entities, through medical review committees, are authorized to investigate and review the quality of care provided by individual practitioners even though they may not be employees of the entity.

> Miss. Code Ann. § 41-63-3. Authority to establish medical or dental review committees; purposes of committees; certain medical and dental information may be furnished for evaluation and improvement of quality and efficiency of medical or dental care.
>
> (1) Any hospital, medical staff, state or local professional medical, pharmacy or dental society, nursing home, health maintenance organization, medical care foundation, preferred provider organization or other health care facility is authorized to establish medical or dental review committees one of the purposes of which may be to evaluate or review the diagnosis or treatment or the performance or rendition of medical or hospital services, to evaluate or improve the quality of health care rendered by providers of health care service, to determine that health care services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable under the circumstances.

Miss. Code Ann. § 41-63-3(1) (Supp. 1997).

¶23. The Claypools claim that the Legislature did not have the authority to enact the statutes at issue in this case. They assert that Miss. Code Ann. § 41-63-9 and § 41-63-23 are both impermissible because the Legislature seeks to abrogate the Mississippi Rules of Evidence and the Mississippi Rules of Civil Procedure. The Claypools correctly state "[t]he inherent power of this Court to promulgate procedural rules emanates from the fundamental constitutional concept of the separation of powers and the vesting of judicial powers in the courts." *Newell v. State*, 308 So. 2d 71, 76 (Miss. 1975)). "The powers vested in this Court by the Constitution of the State of Mississippi are very broad. 'The judicial power has been authoritatively read as including the power to make rules of practice, procedure, and evidence.'" *Mississippi Ethics Comm'n v. Committee on Prof'l Responsibility of the Mississippi Bar*, 672 So. 2d 1222, 1225 (Miss. 1996) (quoting *Hall*, 539 So. 2d at 1345).

¶24. However, in the case sub judice the Legislature was seeking to encourage health care providers to self-police themselves by reviewing and critiquing members of their medical staff. The Legislature enacted

Miss. Code Ann. § 41-63-9 and § 41-63-23, where the proceedings and records of committees were to be confidential and non-discoverable, in order to foster the discussion of matters freely and allow the committees to take action without outside influence.

¶25. One court dealt with a similar statute[(2)] that created a potential conflict between the judicial powers and legislative powers by determining the statute was "an exercise of the legislature's constitutional authority to enact laws to preserve public health and safety." *Southwest Community Health Servs. v. Smith*, 755 P.2d 40, 42 (N.M. 1988). Likewise, the Mississippi Legislature considered Miss. Code Ann. § 41-63-9 and § 41-63-23 to be essential substantive law created "for the expressed legislative purpose of promoting quality patient care through medical and dental peer review activities." Miss. Code Ann. § 41-63-9 (3) and § 41-63-29.

¶26. The Legislature specifically labeled these statutes as substantive rather than procedural, and the Court finds that the Legislature did not intend to abrogate any procedural rules. The statutes are intended to enforce the Legislature's authority to police and regulate health care in Mississippi. *J.J. Newman Lumber, Co.*, 102 Miss. at 821, 59 So. at 925; *Hawkins*, 108 Miss. at 288, 66 So. at 743. Where a statute is constitutional this Court must give effect to its substantive nature, rather than use a procedural rule to overturn it. *Barnes v. Mississippi*, 992 F.2d 1335, 1341 (5th Cir. 1993) (citation ommitted).

¶27. This Court has stated its standard in reviewing the constitutionality of statutes:

> Without doubt, our constitutional scheme contemplates the power of judicial review of legislative enactments; however, that power may be exercised affirmatively only where the legislation under review be found [i]n the palpable conflict with some plain provision of the. . . constitution.

> Statutes such as the Youth Court Act come before us clothed with a heavy presumption of constitutional validity. The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn [to] uphold the selfsame constitution as are we.

*Marshall v. State*, 662 So. 2d 566, 572 (Miss. 1995) (*quoting In the Interest of T.L.C.*, 566 So.2d 691, 696 (Miss. 1990)).

¶28. The Legislature was within its constitutional authority when it enacted Miss. Code Ann. § 41-63-9 and § 41-63-23. The Legislature intended for these statutes to foster an environment where the health care providers could and would self-police themselves and promote quality patient care through accreditation and quality assurance functions by implementing committees that would review medical staff members' activities. The Court holds that the Claypools failed to carry their burden and prove beyond all reasonable doubt that the Legislature did not have the constitutional authority to enact Miss. Code Ann. § 41-63-9 and § 41-63-23. These statutes were necessary additions to the substantive law of the State in order to promote and encourage self-policing of medical providers so that patients could benefit from the best medical care possible.

### II. WHETHER THE PRIVILEGES CREATED UNDER MISS. CODE ANN. § 41-63-9 AND § 41-63-23 WERE CORRECTLY INTERPRETED BY THE TRIAL JUDGE.

¶29. This Court is left to answer how far the statutes go in prohibiting discovery into matters surrounding medical peer review committees. These statutes have not previously been addressed or interpreted by this Court, and we look to other jurisdictions for their treatment of similar statutes. Both parties have relied primarily on case law from other states to support their arguments. Naturally, River Oaks and Mladineo want the Court to make a broad reading of the statutes in order to prevent discovery of as much materials and information as possible. On the other hand, the Claypools want a very narrow interpretation to allow their discovery requests to go forward. This Court adopts a result which, hopefully, better serves this situation.

> It has been noted that "there is extremely wide variation in the privilege granted by the states," and that "there is little consistency in the entities covered or types of information protected." Susan O. Scheutzow & Sylvia Lynn Gillis, Confidentiality and Privilege of Peer Review Information: More Imagined Than Real, 7 J.L. & Health 169, 186-187 (1992- 1993); see also Ernest J. Naufel, Jr., Physician Peer Review -- Is it Really Confidential?, 45 Fed'n Ins. & Corp. Couns. Q. 229, 229-230 (1995). As a result, the case law interpreting these widely varying statutes has been described as "creating a crazy quilt effect among the states." Scheutzow & Gillis, supra, 7 J.L. & Health at 188; see also Naufel, supra, 45 Fed'n Ins. & Corp. Couns. Q. at 230 ("There are as many different approaches to a resolution of this situation as there are appellate courts and legislatures."); Charles David Creech, The Medical Review Committee Privilege: A Jurisdictional Survey, 67 N.C.L.Rev. 179, 212 (1988). Thus, although nearly every state has some form of statutory privilege for medical peer review, it appears that no two statutes, or courts' interpretations of them, are alike.

*Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, 153 (N.D. 1996).

¶30. We consider Miss. Code Ann. §41-63-9 and § 41-63-23 and their interpretation so as to not conflict with the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence. M.R.C.P. 26(b) begins "[u]nless otherwise limited by order of the court in accordance with these rules. . ." and grants a fairly broad scope of discovery. Privileges are sparingly provided and recognized in Mississippi. M.R.E. 501 provides privileges in the following manner:

> Except as otherwise provided by the United States Constitution, the State Constitution, by these rules, or by other rules applicable in the courts of this state to which these rules apply, no person has a privilege to:

> (1) Refuse to be a witness;

> (2) Refuse to disclose any matter;

> (3) Refuse to produce any object or writing; or

> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

¶31. This Court recognizes "legislative suggestions concerning procedural rules and they will be followed unless determined to be an impediment to justice or an impingement upon the constitution." *Newell*, 308 So. 2d at 76. We find that the Legislature created a permissible substantive statutory exception to discovery and evidence by enacting Miss. Code Ann. § 41-63-9 and § 41-63-23. However, the lower court erred by interpreting the statutory language in such a broad manner contrary to the Legislature's intent, which interpretation does in fact encroach upon the procedural rules promulgated by this Court. Therefore,

a thorough review of the statutes is necessary so that the Court may address and formulate guidelines for the statutory interpretations.

¶32. "When interpreting a statute, '[t]he proper way to determine the real intent of the legislature is to study the words used by it in context.'" *Kerr-McGee Chemical Corp. v. Buelow*, 670 So. 2d 12, 17 (Miss. 1995) (*quoting* *Back-Acres Country Club, Inc. v. Mississippi State Tax Comm'n*, 216 So. 2d 531, 534 (Miss.1968)). If the statutes are unclear or ambiguous, the Court must look to rules of construction in order to determine the legislative intent. *Id.*

> 'In construing statutes, not only the language but the purpose and policy which the Legislature has in view must be considered, and the Court in construing a statute will give effect to such purpose and policy, though the interpretation may go beyond the letter of the law. *Smith v. Chickasaw County*, 156 Miss. 171, 125 So. 96, 705.' . . .'In the construction of a statute, the object is to get at its spirit and meaning, --its design and scope; and that construction will be justified which evidently embraces the meaning and carries out the object of the law, although it is against the letter and the grammatical construction of the act.' *Ott v. State ex rel. Lowery*, 78 Miss. 487, 500, 29 So. 520, 521. . . .'Words or phrases may, however, be supplied by the courts and inserted in a statute, where that is necessary to obviate repugnancy and inconsistency in the statute, complete the sense thereof, and give effect to the intention of the legislature manifested therein. The rule prevails where words have been omitted from a statute through clerical error, or by accident or inadvertence. The rule is especially applicable where such application is necessary to prevent the law from becoming a nullity.' 50 Am.Jur., Statutes, Sec. 234, pp. 222-223.

*Evans v. Boyle Flying Serv., Inc.*, 680 So. 2d 821,825 (Miss. 1996) (quoting *McMullen v. State*, 217 Miss. 256, 63 So.2d 856, 861 (1953)).

¶33. It is to be noted that Miss. Code Ann. § 41-63-9 and §41-63-23 are in conflict with the general policy favoring discovery and admissibility of probative evidence. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). "Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public . . . has a right to every man's evidence.' " *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting United *States v. Bryan*, 339 U.S. 323, 331 (1950)). "Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a '"public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."' *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (citations omitted).

¶34. As previously discussed, this type legislation is passed "to promote the public health, safety and welfare and to provide for basic standards of care and treatment of hospital patients." *Shelton v. Morehead Mem'l Hosp.*, 347 S.E.2d 824, 828 (N.C. 1986). Similar statutes have been enacted in other states with the sole purpose of creating a limited privilege of confidentiality to permit quality assurance control and review of activities in a hospital. *Manthe v. VanBolden*, 133 F.R.D. 497, 503 (N.D. Tex. 1991). This privilege is "intended to prohibit the chilling effect of the potential public disclosure of statements made to or information prepared for and used by the committee in carrying out its peer review function." *Cruger v. Love*, 599 So. 2d 111, 114-15 (Fla. 1992).

¶35. The concerns and needs for confidentiality of peer review committees have been discussed by several states as follows:

Concerns were expressed that physicians would be unwilling to serve on quality assurance committees, and would not feel free to openly discuss the performance of other doctors practicing in the hospital, without assurance that their discussions in committee would be confidential and privileged. It was this purpose to encourage frank and open physician participation, and the resulting improvement in patient care, which underlies the privilege.

*Trinity Med. Ctr.*, 544 N.W.2d at 155.

Confidentiality is essential to effective functioning of these staff meetings; and these meeting are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a sine qua non of adequate hospital care. . . . Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

*Coburn v. Seda*, 677 P.2d 173, 176-77 (Wash. 1984) (quoting *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249, 250 (D.D.C. 1970), aff'd, 479 F.2d 920 (D.C. Cir. 1973)). *See **Roach v. Springfield Clinic***, 623 N.E.2d 246, 251 (Ill. 1993).

¶36. Although the different states employ corresponding language in their peer review statutes, the scope granted to each varies according to the varying judicial interpretations. The breadth of the scope afforded to each state's statutes is dependent upon the exact language contained therein.

¶37. In a case where the plaintiffs wanted the names of the participants of a peer review committee, the court did not allow such a disclosure based on the peer review privilege. *Yuma Reg'l Med. Ctr. v. Superior Court*, 852 P.2d 1256 (Ariz. Ct. App. 1993). The court stated that by allowing the disclosure of those who participated in peer review proceedings the plaintiffs would be able to indirectly determine what was discussed, which they could not do directly. *Id.* at 1259. The disclosure of the names of the participants was not allowed. *Id.*

¶38. The Arizona statute, like Mississippi's, provided that the privilege did not extend to information that originated outside the peer review process. The court in *Yuma Regional Medical Center* did not allow the privilege to attach to information obtained by the peer review committee that was not previously privileged. *Yuma Reg'l Med. Ctr.*, 852 P.2d at 1260. However, the plaintiffs cannot obtain the information from outside or original sources without first knowing for what to ask, which was the problem encountered by the court in *Yuma Regional Medical Center.* The court there knew disclosing the list of participants of a peer review committee would inform the plaintiffs what information was relevant and needed to be sought from outside or original sources. *Id.* The court disallowed the disclosure of the information stating, "a plaintiff is not entitled to engage in a fishing expedition to ascertain what information was considered by the peer review committee where such information might reveal the deliberative processes of the participants." *Id.* at 1261.

¶39. At least one state has treated the peer review privilege the same as trial preparation materials. The Supreme Court of New Mexico interpreted the statute in that state to include "all data and information acquired by a review organization in the exercise of its duties and functions, and opinions formed as a result of the review organization's hearings. . . ." *Southwest Community Health Servs.*, 755 P.2d at 44. However, the court allowed discovery of the material if it was not generated exclusively for peer review and

it was not otherwise available from another source by the exercise of due diligence. *Id.* M.R.C.P. 26(b)(3) allows discovery of items otherwise discoverable where the party is unable without undue hardship to obtain the substantial equivalent of the materials from another source.

¶40. It is clear that some states did not wish to provide unlimited protection to persons giving testimony or providing information to peer review organizations. *See Corrigan v. Methodist Hosp.*, 857 F.Supp. 434, 437 (E.D. Pa. 1994). Evidence or opinions presented to a peer review committee "during its deliberations does not thereby make that evidence or opinion privileged if offered or proved by means apart from the record of the committee." *Texarkana Mem'l Hosp. v. Jones*, 551 S.W.2d 33, 36 (Tex. 1977). The statute is meant to prevent the discovery and use of records and proceedings of the committees. *Id.* The law is not to protect information of a hospital's medical staff, but rather it is to afford protection to information of **committees** of licensed or accredited hospitals or their medical staffs. *Roach*, 623 N.E.2d at 250. "[T]he statute was never intended to shield hospitals from potential liability." *Id.* at 251.

¶41. When addressing the possible argument that anything labeled "committee" becomes confidential, the district court of Texas rejected such a possibility. Functions of a credentialing committee or executive committee which do not deal with the daily activities of the hospital or ensure suggestions from staff to evaluate and improve the treatment and care of patients are not protected by the privilege. *Manthe*, 133 F.R.D. at 503.

¶42. The records and transcripts of the proceedings of peer review committees are privileged under Miss. Code Ann. § 41-63-9 and § 41-63-23. However, the results of the proceedings of those committees are not privileged. No logical reading of the statutory language will allow such a result. The Supreme Court of Washington has answered affirmatively on the issue as follows:

> Although the extent of a physician's hospital privileges may be determined by what occurs within a quality review committee, the fact that a physician's privileges are restricted, suspended or revoked is not properly subject to the protections of the statute. The goal and fundamental purpose of the statute is open discussion during committee investigations. Open discussion is not inhibited by permitting discovery of the effect of the committee proceedings. The purpose of this statute is to keep peer review studies, discussions, and deliberations confidential. A facial examination of the statute reveals that it is not designed to obstruct discovery as to whether a physician's privileges had been revoked or suspended.

> The statute may not be used as a shield to obstruct proper discovery of information generated outside review committee meetings. The statute does not grant an immunity to information otherwise available from original sources. For example, any information from original sources would not be shielded merely by its introduction at a review committee meeting. Further, the hospital must identify all persons who have knowledge of the underlying event which is the basis of the malpractice action regardless of whether those persons presented evidence to a hospital review committee. *Coburn*, 101 Wash.2d at 277, 677 P.2d at 173.

(Footnote omitted).

> Additionally, if the final decision to restrict, revoke, or suspend a physician's hospital privileges is made by an administrator or entity other than a peer review committee, the records of that entity or individual are discoverable to the extent they do not contain the record of a quality review committee.

*Anderson v. Breda*, 700 P.2d 737, 741-42 (Wash. 1985). *See Hollowell v. Jove*, 279 S.E. 2d 430, 434 (Ga. 1981); *Shelton*, 347 S.E. 2d at 829 (Court held information in any form from original source not immune merely because presented to committee, and one who was a member of a committee is not to be prevented from testifying as to information learned from other sources, even if same information was presented to the committee.).

¶43. The privilege does not extend to material otherwise discoverable from original sources, but factual data available to the committee (not generated by or collected for the use of the committee) is discoverable. *Doe v. Unum Life Ins. Co. of America*, 891 F.Supp. 607, 610 (N.D. Ga. 1995) (*citing Cobb County Kennestone Hospital Auth. v. Martin*, 430 S.E.2d 604, 605-06 (Ga. Ct. App. 1993)). The Supreme Court of Georgia stated:

> While the statute precludes a party from discovering the proceedings and records of a peer review organization, it specifically authorizes a party to seek from original sources documents which the peer review organization examined, and to examine anyone who appeared before or was a member of the peer review organization, so long as the witness is not asked about the peer review proceedings.

*Id.* (quoting *Freeman v. Piedmont Hosp.*, 444 S.E.2d 796, 797 (Ga. 1994). The Supreme Court of South Carolina held "the statute does not protect information if obtained from alternative sources. Hence, the plaintiff seeking discovery cannot obtain documents which are available from the original source directly from the hospital committee, but may seek them from alternative sources." *McGee v. Bruce Hosp. Sys.*, 439 S.E.2d 257, 260 (S.C. 1993). The Supreme Court of Florida has interpreted its peer review statutes to protect "any document considered by the committee or board as part of its decision-making process." *Cruger*, 599 So. 2d at 114. However, the court specifically "interpret[ed] the 'otherwise available' language of the statute to mean that a document that a party secures from the original source is not privileged merely because it was presented during peer review committee or board proceedings." *Id.* The court in *Cruger* determined that a document requested of a committee would be privileged, while an identical copy of the document obtained from an original source would not. *Id.*

¶44. The Court finds that a narrow approach much like the ones used in the above cases is the approach probably intended by the Legislature. In *Trinity Medical Center*, the court noted the importance of following the intent of the statute.

> We must be particularly vigilant against extending the scope of the privilege beyond that warranted by the purpose expressed in the language of the statute. In this regard, we agree with the rationale expressed by the Supreme Court of Rhode Island in Moretti v. Lowe, 592 A.2d 855, 857-858 (R.I. 1991):

> "In enacting our peer-review statute, the Legislature recognized the need for open discussions and candid self-analysis in peer-review meetings to ensure that medical care of high quality will be available to the public. That public purpose is not served, however, if the privilege created in the peer-review statute is applied beyond what was intended and what is necessary to accomplish the public purpose. The privilege must not be permitted to become a shield behind which a physician's incompetence, impairment, or institutional malfeasance resulting in medical malpractice can be hidden from parties who have suffered because of such incompetence, impairment, or malfeasance."

> Accordingly, we determine the scope of the peer review privilege from the language of our statutes

and the purpose that language was intended to achieve.

***Trinity Med. Ctr.***, 544 N.W.2d at 154.

¶45. River Oaks calls for a broad interpretation as to the application of the statutes. The affidavit of Samuel W. Cameron, President and Chief Executive Officer of the Mississippi Hospital Association, stated that the confidentiality of the proceedings and records of medical review committees is absolutely necessary in order for the hospital peer review process to be effective and meaningful. The confidentiality of the proceedings and records of the medical review committees is exactly what the Legislature contemplated and intended by enacting Miss. Code Ann. § 41-63-9 and § 41-63-23.

¶46. The problem lies in the statutes themselves as to the meaning of certain phrases. Miss. Code Ann. § 41-63-9(1) (Supp. 1997) states, in part:

> However, information, documents or ***records*** otherwise discoverable or admissible from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during the proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to other matters within his knowledge.

(emphasis added). The term "records" is statutorily defined to "mean any and all committee minutes, transcripts, applications, correspondence, incident reports, and other documents created, ***received***, or reviewed by or for any medical. . .review committee." Miss. Code Ann. § 41-63-1(3) (Supp. 1997) (emphasis added). At first, one might be under the impression that peer review records would encompass anything received by the committee. The district court in Texas denounced extending the privilege unless that which was received by the committee dealt with the daily activities of the hospital or ensured suggestions from staff to evaluate and improve the treatment and care of patients. ***Manthe***, 133 F.R.D. at 503.

¶47. The cases previously discussed rejected the proposition that a document merely received by a committee is immune. In fact, the language of the statute expressly rejects this idea by stating that documents otherwise discoverable are not to be immune from discovery "merely because they were presented during the proceedings. . . ." Miss. Code Ann. § 41-63-9(1) (Supp. 1997). The Court holds that a copy of a document presented to a committee, even if identical, obtained from an original source is subject to discovery.

¶48. The statutes were never intended to shield hospitals from potential liability. The confidentiality and non-discovery of the peer review proceedings were designed to advance the quality of health care by ensuring medical professionals would engage in self-evaluation of their peers. In short, the statute was designed to allow the medical profession to "weed out the bad apples."

¶49. The language of the statutes speaks to persons testifying as to matters presented during the proceedings of the committee.

> No person who was in attendance at a meeting of such committee shall be permitted or required to testify in any civil action regarding any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions or other actions of the committee or its members.

Miss. Code Ann. § 41-63-9(1) (Supp. 1997).

> No person involved in preparation, evaluation or review of accreditation or quality assurance materials shall be permitted or required to testify in any civil action as to any evidence or other matters presented during the course of preparation, evaluation or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation or quality assurance or other person involved therein.

Miss. Code Ann. § 41-63-23 (Supp. 1997).

¶50. This language only prohibits persons involved or present at committee proceedings from testifying as to the evidence produced during the committee proceedings. A person, even if a member of a committee or present during committee proceedings, is allowed to testify to other matters within his knowledge not specifically prohibited by the statutory language. It is specious to argue that a person cannot testify as to whether a person is disciplined, suspended, or fired just because that evidence was presented or recommended at the peer review committee. If the outcome was known to the person after the proceedings, he should be allowed to testify as to that outcome because it was otherwise within his knowledge. A matter should not become privileged merely because it was presented to a committee. Before matters should be cloaked with a privilege it should be of a type that if allowed would cause medical providers to cease self-evaluations for fear of no privilege. This would in turn hinder the advancement of health care and completely contradict the purpose of the statutes.

¶51. Granted, medical professionals, who were either members of a peer review committee or in attendance at such proceedings, should not be able to testify as to what took place or matters discussed during those proceedings. But that same person is not prohibited by the privilege to answer questions as to his opinions on matters within his knowledge that are not in the context of the proceedings. In other words, a person cannot be asked what he said in a committee proceeding. But he can be asked questions in discovery or on a witness stand that would elicit the same information given to the committee. This has been stated as follows:

> The court recognizes that the law of peer review privilege has not ceased evolving. This much, however, is known: witnesses appearing at a hearing can be deposed, but not on the subject of their testimony before the committee (as distinguished from matters within their personal knowledge, which may or may not at times be the same); documents that would have existed regardless of whether the committee may have considered them in an investigation are discoverable, but only from their original sources; and names and addresses of people having personal knowledge of events that are the subject matter of the litigation may be acquired through interrogatory and deposition. This latter option remains available to defendant in the instant case, and the court will not protect the institutions from a properly-drafted interrogatory that abides by the parameter set forth in this Order.

*Unum Life Ins. Co.*, 891 F.Supp. at 611 (internal citations omitted).

¶52. The Claypools contend that ad hoc committee concerning laparoscopic surgery discussed by the M.R.C.P. 30(b)(6) representative of River Oaks is not a peer review committee covered by the language in Miss. Code Ann. § 41-63-9. The language of the statute pertains to "the proceedings and records of *any* medical. . .review committee." Miss. Code Ann. § 41-63-9(1) (Supp. 1997). The Court holds that the

language of the statute applies the privilege to any medical review committee formed or created with the sole purpose and function of peer review to promote quality assurance. The privilege should not apply to committees where peer review of quality assurance is a peripheral function. The party or parties wishing to apply the privilege must prove that the particular committee in question comes within the purview of Miss. Code Ann. § 41-63-9 and §41-63-23. *See Doctor's Hosp. v. West*, 765 S.W.2d 812, 814 (Tex. Ct. App. 1988) (holding party asserting the privilege has burden of proving the documents qualify); *Anderson*, 700 P.2d at 740 (requiring the burden of establishing entitlement to the privilege to rest with the party resisting discovery); *Southwest Community Health Servs.*, 755 P.2d at 44 (stating burden on party invoking privlege to prove the information generated exclusively to be presented to the committee before privilege applied); *Roach*, 623 N.E.2d at 251 (placing the burden of establishing the applicability of the privilege upon the party wishing to invoke it); *Corrigan*, 857 F.Supp. at 436 (holding burden of proving privilege is on party objecting to discovery); *Ballard v. Herzke*, 924 S.W.2d 652, 658 (Tenn. 1996) (placing burden of justifying the confidentiality of each and every document sought to be covered by a protective order on the party seeking the order).

¶53. River Oaks filed its motion for protective order to prohibit the discovery of the hospital's peer review records and proceedings. The Claypools filed motions to compel both River Oaks and Mladineo to produce discovery. After a hearing, the lower court judge issued his Order sustaining River Oaks' and Mladineo's objections to discovery and denied the Claypools' motion to compel. The judge stated that after reviewing the documents in camera he found them to constitute either proceedings and medical records of medical review committees or accreditation and quality assurance materials. Therefore, the documents are confidential and not subject to discovery pursuant to Miss. Code Ann. § 41-63-9 and § 41-63-23.

¶54. The trial judge followed the correct procedure to determine whether or not the documents were privileged and subject to discovery. His procedure for making this determination could be used as a standard for others to follow. However, we differ from his result. The analysis posited above should be followed in determining what is privileged and what is not.

¶55. The intent of the statutes from other jurisdictions is clear. The self-evaluation of medical staff by medical providers can only be fully utilized where members of peer review committees or those present during committee proceedings are assured of confidentiality so that they will feel free to enter into uninhibited discussions of their peers.

¶56. The use of the privilege by both the hospital and Mladineo was too broad. It seems they were attempting to use the privilege as a shield from potential liability. River Oaks agrees that the mere fact that matters are presented to a medical review committee does not prevent a plaintiff from obtaining discovery from other sources. However, River Oaks is quick to assert that the statutory definition of records contained in Miss. Code Ann. § 41-63-1(3) includes documents created, received or reviewed by the committee. River Oaks states that the clear intent of the statute is to protect from disclosure not only the records, but also the identity of the records considered by the committee. This has been treated with derogation by other courts, and we do likewise by adopting their rationales.

¶57. River Oaks and Mladineo want this Court to interpret the statutes in such a manner as to prevent the identity of the persons who testified or were present during the peer review committee proceedings. The answer is found by reading the plain language of the statute. The statute allows a plaintiff to discover information, documents or records otherwise discoverable from original sources. Miss. Code Ann. § 41-

63-9(1) (Supp. 1997). This discovery should be conducted in accordance with and pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence. Further, persons who are members of a committee or were present at the committee proceedings are permitted to testify to matters within their own knowledge. Before a plaintiff may discover information, documents or records otherwise discoverable from original sources or depose a witness who is a member of a committee or present during committee proceedings, the plaintiff must know the identity of the original information and the original sources and those persons who were members of the committees or present during the proceedings. The hospital should be required to provide a list of the documents received, not every document considered as rejected by the court in *Yuma Regional Medical Center*, by the committees and names of the participants or bystanders during the peer review committees. At least one court has agreed with this proposition. The Supreme Court of Washington stated that "the hospital must identify all persons who have knowledge of the underlying event which is the basis of the malpractice action regardless of whether those persons presented evidence to a hospital review committee." *Coburn*, 677 P.2d at 177.

¶58. The Court is mindful that it has the exclusive power to make rules of practice, procedure and evidence. *Hall*, 539 So. 2d at 1345. However, where the Legislature enacts a statute creating a privilege it should be upheld, unless it conflicts with either the Mississippi Rules of Civil Procedure or the Mississippi Rules of Evidence. We do not interpret the statutes to prohibit the identification of documents submitted to peer review committees or participants and bystanders of peer review committees.

## <u>CONCLUSION</u>

¶59. The Legislature has the authority under its police powers to enact legislation to preserve the health and protect the lives of the citizens of the State of Mississippi. This Court has the exclusive power to make rules of practice, procedure and evidence. The Legislature very properly enacted Miss Code Ann. § 41-63-9 and § 41-63-23 with the sole purpose of advancing medical care and providing an improved environment for future patient care.

¶60. The Court analogizes the medical peer review committee to be much like a jury deliberation, and near sacred. The statutes clearly express such a designation. In examining the jury and its deliberations one can examine the evidence submitted to the jury and the verdict reached by the jury, but what actually takes place in the jury room is "non-discoverable." Likewise, the information which was considered and discussions had during the proceedings are non-discoverable. The statutes at issue in the case before this Court should not be used in an attempt to make all of the information presented to committee and the persons who are members of peer review committees or present during those proceedings non-discoverable. This goes against the plain language of the statutes.

¶61. Information, records or documents submitted to peer review committees should not be privileged merely because they were presented to the committee. If a plaintiff can find the identical information from another source separate and outside of the peer review proceeding, he should be able to discover and use the evidence in his civil suit against the defendants. If a plaintiff can elicit testimony from a person who was present during the proceedings without asking "tell me what you told them," he should be able to get the same opinions in the form of responses to properly phrased interrogatories or through deposition testimony.

¶62. The statutes do not allow a plaintiff to inquire as to the peer review proceedings themselves. A plaintiff is not entitled to a transcript of the medical peer review committee proceeding to determine what was discussed or **considered** by the committee. But, a plaintiff is entitled to information and documents

**presented** to the committee in order to know what and where to find the information otherwise discoverable from original sources. Additionally, defendants who assert the privilege should be required to provide the names and addresses of all present during the medical peer review committee proceedings to the plaintiffs so that they might schedule depositions of those persons.

¶63. Anything otherwise discoverable is still discoverable. Any other interpretation will abrogate the Mississippi Rules of Evidence and the Mississippi Rules of Civil Procedure. The lower court's decision to grant a protective order to all of the documents was in error and that order is reversed by this Court's opinion. Further discovery in this action should comply with the guidelines of this Court's opinion.

¶64. **THE TRIAL COURT'S ORDER GRANTING PROTECTIVE ORDER SHALL BE REVERSED AND RENDERED WITH FURTHER PROCEEDINGS CONSISTENT WITH THIS COURT'S OPINION.**

**PITTMAN, P.J., SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. WALLER, J., NOT PARTICIPATING.**

### BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶65. I agree with the majority that this case must be reversed and with most of what it says in instructing the trial court on remand. I disagree, however, with the suggestion that a list of documents received and the names of witnesses and bystanders during peer review committee proceedings is required to be produced. Majority opinion ante p. 30.

¶66. While a hospital or other defendant should be required to identify all persons who have knowledge of the underlying event and all documents that have a bearing on the issues which are not generated and held by the peer review committee, it is, in my view, an unwarranted intrusion into the processes of the committee to require production of a list of persons and documents specifically identified and related to the committee process. *Coburn v. Seda,* 677 P.2d 173 (Wash. 1984) cited by the majority in support of its direction to supply names of participants and bystanders actually holds just the opposite. *Coburn* provides that although the hospital need not identify those persons who attended the peer review meeting, "the hospital must identify all persons who have knowledge of the underlying event which is the basis of the malpractice action regardless of whether those persons presented evidence to a hospital review

committee."*Id.* at 177.

¶67. Nor is there support for the proposition that a list of documents received by the committee should be available. The list of documents received by the committee are quite obviously records of the committee. Undoubtedly a list of all documents which have a bearing on the issues would include most if not all of the documents presented to the peer review committee. Such a list is amenable to discovery. Identifying a list of documents as having been presented in peer review, however, is, in my view, violative of the statute. This is precisely what the court held in *Yuma Regional Medical Center v. Superior Court*, 852 P. 2d 1256, 1261 (Ariz. Ct. App. 1993) ("requiring [the hospital] to list each written or documentary item *submitted* to the peer review committee is violative of the peer review privilege.") (emphasis added). The implied suggestion in the majority opinion that *Yuma* may be distinguished based upon whether the request is for documents "received" rather than documents "considered" is based on a misreading of that case. In a similar vein, *Yuma* rejected a request for a list of participants and bystanders in the peer review proceedings. *Id.* at 1260 (an "order that [the hospital] disclose the names of the persons present at the peer review proceeding at issue in this case violates the peer review privilege."). *See also Moretti v. Lowe*, 592 A.2d 855, 858 (R. I. 1991).

¶68. The suggestion by the majority that it is adopting the rationale of other jurisdictions, Majority opinion ante p. 29, is simply not borne out by a review of the authorities cited by it. Nor has this writer been able to find published case law supporting the majority resolution.

¶69. On the other hand, I also agree with what Justice McRae has written concerning the nature of the committee proceedings and documents which may be insulated from discovery consonant with the overriding concern of the search for truth. What I say above applies to the work of a peer review committee investigating untoward events for the purpose of taking such corrective measures as may be indicated as proper under the circumstances. The legislation here in question is, in my view, overly broad to the extent that it can be interpreted to shield broad categories of records and documents under the shibboleth of "quality assurance" and "accreditation." Miss. Code Ann. § 41-63-21 (Supp. 1998). In theory, almost every hospital record is amenable to use for quality assurance and accreditation. Those terms should be narrowly construed.

**PRATHER, C.J., JOINS THIS OPINION.**


**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**


¶70. Although the majority correctly reverses and renders the circuit court's protective order covering records which had been submitted as part of the peer review and quality assurance processes under the aegis of Miss. Code Ann. § 41-63-9, I disagree with the notion that the medical peer review process should be sacrosanct. As the majority recognizes, Miss. Code Ann. §§ 41-63-9 and 41-63-23 were enacted to improve and enhance patient care. The discovery process is intended to seek the truth. Where the burden is on the patient to establish a breach of an established standard of care, the purpose of these statutes is thwarted if they are allowed to serve as an impediment to finding the truth. Just as we have said that the plaintiff waives any privilege he may claim under M.R.E. 503 when he seeks damages for a physical, mental or emotional injury, so any privilege a defendant doctor or hospital might claim pursuant to §§ 41-63-9 and 41-63-23 should also be waived when the peer review proceedings are an integral aspect

of the defenses raised.

¶71. The majority notes that Mladineo and River Oaks urge too broad a construction of the privilege, attempting to use it as a shield from liability. Thus, it finds that records submitted for peer review are discoverable and further, that members of a committee or those present at committee proceedings should be subject to questioning as to matters within their knowledge. Without such safeguard, an individual might testify one way in a peer review proceeding and quite a different way at trial. The search for truth requires that the plaintiff have the opportunity  and the necessary records  to properly cross-examine him.

¶72. The majority further holds that the privilege created by the statute applies only to "any medical review committee formed or created with the sole purpose and function of peer review to promote quality assurance. The privilege should not apply to committees where peer review of quality assurance is a peripheral function." Slip op. at 27. Clearly, the intent of this language is to limit the applicability of the privilege. However, despite placing the burden on the party claiming the privilege to establish its applicability, this is not accomplished. Limiting the privilege to those instances where peer review of quality assurance is a committee's sole function rather than a peripheral function provides an open invitation to hospitals to tailor peer review committee structures so as to circumvent the parameters drawn by the majority. Further, having to tackle the factual question of whether a committee's peer review role is a peripheral function or its sole function every time questions of medical personnel competence come up in a medical malpractice action will serve only to impede and delay the truth seeking process for the plaintiff.

¶73. While Miss. Code Ann. § 41-63-9 (1) (Supp. 1998)provides that the actual proceedings themselves are confidential and not subject to discovery, "information, documents or records otherwise discoverable or admissible from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during the proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to other matters within his knowledge." Despite this clear directive, the majority muddies the waters by distinguishing between committees which function solely as peer review mechanisms and those which act only peripherally to carry out review functions. We need not confuse the issue of what the privilege is intended to protect: the confidentiality of peer review proceedings or the records and other evidence considered by a peer review body in making a determination necessary "to promote quality assurance." Rather, the focus should be on whether the documents in question were generated exclusively for peer review and for no other purpose. *See Southwest Community Health Servs v. Smith,* 755 P.2d 40, 44 (N. M. 1988).

¶74. When a hospital or physician or other medical personnel places the peer review process at issue by using review committee findings as a defense to a medical malpractice action, the door to discovery should be opened. Otherwise, the plaintiff's burden of proof is an impossible one to meet. Moreover, M.R.E. 503(b) provides a privilege enabling a patient to prevent from disclosure any knowledge derived by his doctor about his condition or any confidential communications he might have had with his treating physicians about his condition. However, once that patient seeks to recover damages for an injury suffered, M.R.E. 503(f) waives that privilege, providing, in relevant part, that:

> Any party to an action or proceeding subject to these rules who by his or her pleadings places in issue any aspect of his or her physical, mental or emotional condition thereby and to that extent only waives the privilege otherwise recognized by this rule.

To the extent that a patient must waive any privilege he might invoke should he put his condition at issue by his pleadings, so a hospital or physician should also be so required.

¶75. In *Southwest*, the New Mexico Supreme Court recognized the need to resolve the conflict between peer review confidentiality and plaintiff access to information in medical malpractice cases. Construing the confidentiality provisions of that state's statute, the Court stated:

> We further hold that, if the information is ruled to be confidential, the party seeking access must then satisfy the trial court that the information constitutes evidence which is critical to the cause of action or defense. If the trial court determines that the success or failure of a litigant's cause of action or defense would likely turn on the evidence adjudged to fall within the scope of Section 41-9-5, then the trial court shall compel production of such evidence. It is the trial judge who will be entrusted with balancing the need to ensure the confidentiality of peer review against the need of litigants to discover evidence essential to the merits of their case. *Cf. **Deitchman v. E.R. Squibb & Sons, Inc.**,* 740 F.2d 556 (7th Cir.1984).

*Southwest*, 755 P.2d at 44-45. As the decision in *Southwest* illustrates, the peer review process may be protected without impinging upon the rights of litigants. Accordingly, while I agree that the circuit court erred in entering a protective order to keep from evidence records that had been submitted to the peer review process, I disagree with the majority's construction of the privilege afforded doctors and hospitals. Rather, they should be treated the same as patients or their personal representatives are pursuant to M.R.E. 503(f).

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. Miss. Code Ann. § 41-63-1(1) (Supp. 1997):

> The terms "medical or dental review committee" or "committee," when used in this chapter, shall mean a committee of a state or local professional medical, nursing, pharmacy or dental society or a licensed hospital, nursing home or other health care facility, or of a medical, nursing, pharmacy or dental staff or a licensed hospital, nursing home or other health care facility or of a medical care foundation or health maintenance organization, preferred provider organization, individual practice association or similar entity, the function of which, or one (1) of the functions of which, is to evaluate and improve the quality of health care rendered by providers of health care service, to evaluate the competence or practice of physicians or other health care practitioners, or to determine that health care services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area and includes a committee functioning as a utilization review committee, a utilization or quality control peer review organization, or a similar committee or a committee of similar purpose, and the governing body of any licensed hospital while considering a recommendation or decision concerning a physician's competence, conduct, staff membership or clinical privileges.

2. N.M. Stat. Ann. Section 41-9-5, which provides:

> All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. No person described in Section 4[ 41-9-4 NMSA 1978] of the Review Organization Immunity Act shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization or in a judicial appeal from the action of a review organization. Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organization's hearings.

*Southwest Community Health Servs. v. Smith*, 755 P.2d 40, 41 (N.M. 1988).